THIRD DIVISION
JULY 28, 2010

No. 1-08-1105

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 07 CR 8843 |
| | ) | |
| CHUKWUEMEKA EBELECHUKWU, | ) | The Honorable |
| | ) | Marcus R. Salone, |
| Defendant-Appellee. | ) | Judge Presiding. |

JUSTICE COLEMAN delivered the opinion of the court:

The issue we consider on this appeal is whether the Trademark Counterfeiting Act of 1984 (18 U.S.C. §2320(a) (2006)) preempts the State from prosecuting defendant, Chukwuemeka Ebelechukwu, under the Illinois Counterfeit Trademark Act (765 ILCS 1040/2 (West 2006)).

Defendant was indicted by a grand jury on one count of possessing over 2,000 pairs of shoes bearing a counterfeit Nike trademark in violation of section 2 of the Illinois Counterfeit Trademark Act. 765 ILCS 1040/2 (West 2006). Prior to trial, defendant filed a motion to dismiss the indictment claiming federal legislation preempted defendant's prosecution for trademark infringement under the Illinois statute. The trial court granted defendant's motion and dismissed the indictment. This appeal followed.

Whether a state law is preempted by federal legislation is a question of law, which we review *de novo*. *Kinkel v. Cingular Wireless, LLC,* 223 Ill. 2d 1, 15 (2006). Fundamental to our system of government is the principle that state and federal governments have the inherent power

"to determine independently what shall be an offense against its authority and to punish such offenses, and in doing so each is exercising its own sovereignty, not that of the other." *People v. Lewis,* 295 Ill. App. 3d 587, 589 (1998), citing *United States v. Wheeler,* 435 U.S. 313, 320, 55 L. Ed. 2d 303, 310, 98 S. Ct. 1079, 1084 (1978). The supremacy clause of the United States Constitution grants Congress the power to limit the states' exercise of their sovereignty. U.S. Const., art. VI, Cl. 2.

The extent to which federal legislation preempts state law is essentially a matter of legislative intent. *Gade v. National Solid Wastes Management Ass'n,* 505 U.S. 88, 96, 120 L. Ed. 2d 73, 83, 112 S. Ct. 2374, 2381 (1992). There are two broad categories of legislative intent: express and implied. If Congress, when acting within constitutional limits, explicitly mandates the preemption of state law within a stated situation, no further analysis is required. *Gade,* 505 U.S. at 98, 120 L. Ed. 2d at 84, 112 S. Ct. at 2383. Absent an expressed intention by Congress to preempt state law, we may infer preemptive intent in two situations: field preemption and conflict preemption. Field preemption is implied where the scheme of the federal regulation is "so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it." *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 91 L. Ed. 1447, 1459, 67 S. Ct. 1146, 1152 (1947). Conflict preemption arises in two ways: (1) where "compliance with both federal and state regulations is a physical impossibility" (*Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 142-43, 10 L. Ed. 2d 248, 257, 83 S. Ct. 1210, 1217 (1963)); or (2) where state law creates an obstacle or otherwise impedes the accomplishment and execution of the full purposes and objectives of federal law (*Hines v. Davidowitz,* 312 U.S. 52, 67-68, 85 L. Ed. 581, 587, 61 S. Ct. 399, 404 (1941)).

Where the field that federal legislation is said to have preempted traditionally has been occupied by the states, we begin with the assumption that the historic police powers of the states were not to be superseded by federal legislation unless that was "the clear and manifest purpose of Congress." *Rice,* 331 U.S. at 230, 91 L. Ed. at 1459, 67 S. Ct. at 1152. The power to prosecute criminal conduct traditionally has been within the ambit of state authority. *People v. Chicago Magnet Wire Corp.,* 126 Ill. 2d 356, 367 (1989), citing *Knapp v. Schweitzer,* 357 U.S. 371, 375, 2 L. Ed. 2d 1393, 1398, 78 S. Ct. 1302, 1305 (1958); *Patterson v. New York,* 432 U.S. 197, 201, 53 L. Ed. 2d 281, 287, 97 S. Ct. 2319, 2322 (1977).

The instant case requires that we determine whether Congress intended the Trademark Counterfeiting Act (18 U.S.C. §2320(a) (2006)) to preempt the Counterfeit Trademark Act (765 ILCS 1040/2 (West 2006)). Accordingly, we begin by examining the language of the federal statute at issue to discern congressional intent. Nothing in section 2320(a) refers to state law at all or explicitly states any preemptive intention by Congress in enacting the Trademark Counterfeiting Act. However, section 2320(a), which codifies trademark infringement as federal criminal conduct, is not the entirety of federal legislation in the realm of trademarks. Rather, the Trademark Counterfeiting Act, in section 2320(a), is the criminal parallel to the Lanham Act (15 U.S.C. §1051 *et seq.* (2000)), a purely civil statute that governs federal regulation of trademarks, including infringement. See *Green v. Fornario,* 486 F.3d 100, 102 n.1 (3d Cir. 2007). The Lanham Act also does not contain an explicit statement of preemptive intent. Having found no express intention from Congress to preempt state prosecution for trademark infringement, we proceed to address whether Congress has implied such intent.

Defendant asserts that Congress implicitly intended to occupy the field of trademark infringement by enacting an abundance of trademark legislation. In support of this argument,

defendant recites the history of federal legislation beginning in 1881 and continuing through 1999. Defendant also refers to three sections of the Lanham Act as evidence of congressional intent to exclude state legislation in this area: section 1121(b), which provides that no State may require alteration of a registered mark or marks additional to those contemplated by "the registered mark as exhibited in the certificate of registration issued by the United States Patent and Trademark Office"; section 1122, which contains a waiver of sovereign immunity by the States and the United States; and section 1127, which recites as one purpose of the Lanham Act the protection of "registered marks in such commerce from interference by State, or territorial legislation." 15 U.S.C. §§1121(b), 1122, 1127 (2002). We find defendant's argument unpersuasive.

The three sections identified by defendant as indicative of a congressional effort to exclude state law and occupy the field of trademark infringement do not, in this court's view, present a full-scale federal regulatory scheme of the sort that would support an inference of field preemption. Indeed, both federal and state courts have consistently interpreted the Lanham Act and federal trademark legislation as not having "broad preemptive reach." *JCW Investments, Inc. v. Novelty, Inc.,* 482 F.3d 910, 919 (7th Cir. 2007) (stating that "[i]n the area of trademark law, preemption is the exception rather than the rule, "the court held that the Lanham Act did not preempt state-law punitive damages available under the Illinois unfair competition statute); *Attrezzi, LLC v. Maytag, Corp.,* 436 F.3d 32, 42 (1st Cir. 2006) (holding that the Lanham Act did not preempt state law remedies in the form of attorney fees and double damages under New Hampshire's trademark infringement and antidilution statutes); *Sporty's Farm L.L.C. v. Sportsman's Market., Inc.,* 202 F.3d 489, 500-01 (2d Cir. 2000) (citing a legislative report indicating that the federal trademark laws dealing with cyber-squatting were not designed to

preempt state law remedies); *Viacom Inc. v. Ingram Enterprises, Inc.,* 141 F.3d 886, 891 (8th Cir. 1998) (finding that the Lanham Act does not preempt state antidilution laws because Congress made federal trademark registration a defense to claims under state antidilution statutes rather than preempting them); *Tonka Corp. v. Tonk-A-Phone, Inc.,* 805 F.2d 793, 794-95 (8th Cir. 1986) (holding that the Lanham Act did not preempt recovery of attorney fees under Minnesota's Deceptive Trade Practices Act). Moreover, the two state courts that have decided the precise issue here have held that the federal Trademark Counterfeiting Act, embodied in section 2320, does not preempt state criminal statutes penalizing trademark counterfeiting. See *Commonwealth v. Sow,* 2004 PA Super 377, ¶16 (2004); *State v. Frampton*, 737 P.2d 183, 191 (Utah 1987). Although defendant correctly points out that the Pennsylvania and Utah cases have merely persuasive value and urges this court to conduct an independent evaluation of the issue, he makes no attempt to distinguish those cases from the case *sub judice.* Accordingly, defendant has failed to demonstrate that the "clear and manifest" intent of Congress was to comprehensively control all aspects of the trademark field. See *Rice,* 331 U.S. at 230, 91 L. Ed. at 1459, 67 S. Ct. at 1152.

Next, we consider whether compliance with both the federal law and the state law would be a physical impossibility, thus preempting the Illinois statute through "conflict preemption." See *Florida Lime & Avocado Growers, Inc.,* 373 U.S. at 142-43, 10 L. Ed. 2d at 248, 83 S. Ct. at 1217. Since both the Illinois statute section 2 and section 2320(a) of the federal Trademark Counterfeiting Act provide for criminal penalties arising from trafficking in counterfeit trademark goods and services, we fail to see how compliance with both the federal and the state law would create a physical impossibility. Simply put, comply with both laws by avoiding trafficking in counterfeit goods.

Defendant asserts that section 2 of the Counterfeit Trademark Act conflicts with section 2320(a) of the federal Trademark Counterfeiting Act because the federal statute incorporates a series of affirmative defenses available under the Lanham Act and the Illinois statute contains no similar list of affirmative defenses.

However, the question posed in conflict preemption is not whether any conceivable inconsistency exists between the statutes, but whether the state law poses an obstacle or impediment to the accomplishment of the objectives of Congress. The question then becomes whether section 2320(a) and federal trademark infringement legislation is compromised by the Illinois law or the Illinois law otherwise conflicts with federal objectives. We find no discernable conflict.

The Lanham Act was enacted "in order to provide national protection for trademarks used in interstate and foreign commerce." *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.,* 469 U.S. 189, 193, 83 L. Ed. 2d 582, 587, 105 S. Ct. 658, 661 (1985). The Lanham Act itself contains a statement of intent in section 1127, which states:

> "The intent of this Act is to regulate commerce within the control of Congress by making actionable the deceptive and misleading use of marks in such commerce; to protect registered marks used in such commerce from interference by State, or territorial legislation; to protect persons engaged in such commerce against unfair competition; to prevent fraud and deception in such commerce by the use of reproductions, copies, counterfeits, or colorable imitations of registered marks; and to provide rights and remedies stipulated by treaties and conventions respecting trade-

marks, trade names, and unfair competition entered into between

the United States and foreign nations." 15 U.S.C. §1127 (2000).

Likewise, the Trademark Counterfeiting Act is not simply an anti-consumer-fraud statute, but rather, "a central policy goal of the [Trademark Counterfeiting] Act is to protect trademark holders' ability to use their marks to identify themselves to their customers and to link that identity to their reputations for quality goods and services." *United States v. Torkington,* 812 F.2d 1347, 1353 (11th Cir. 1987), citing S. Rep. No. 98-526, at 1-2, 4-5 (1984), *reprinted in* U.S.C.C.A.N. 3627-28, 3630-31 and H.R. Rep. No. 997, at 5-6.

The Counterfeit Trademark Act in no way interferes with the federal trademark registration scheme or the rights of registered mark holders. At most the Illinois law augments and supplements the federal scheme by providing criminal penalties for trafficking in counterfeit goods to which a trademark is attached. See *Mead Data Central, Inc. v. Toyota Motor Sales, U.S.A., Inc.,* 702 F. Supp. 1031, 1041 (S.D.N.Y. 1988). Rather than impeding congressional objectives, in fact, the state law furthers the same purposes as the federal statute. Both statutes are intended to protect trademark holders from misappropriation of their investment and penalize those individuals who infringe on trademarks by trafficking in counterfeit goods. Consequently, we find no implied conflict preemption.

A state law is not preempted simply because it seeks to regulate criminal conduct that is identical to conduct subject to federal regulation. See *Chicago Magnet Wire Corp.*, 126 Ill. 2d at 371. Without evidence of Congress's intention, express or implied, to preempt state prosecution under the Counterfeit Trademark Act, we conclude that prosecution thereunder is not preempted. Therefore, we reverse the trial court's dismissal of the indictment and remand for further proceedings.

Reversed and remanded.

MURPHY, P.J., and QUINN, J., concur.