Docket No. 110194.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. CLAUDIA MADRIGAL, Appellee.

*Opinion filed March 24, 2011.*

JUSTICE THOMAS delivered the judgment of the court, with opinion.

Chief Justice Kilbride and Justices Freeman, Garman, Karmeier, Burke, and Theis concurred in the judgment and opinion.

**OPINION**

Defendant, Claudia Madrigal, was indicted in the circuit court of Kane County on one count of identity theft in violation of section 16G–15(a)(7) of the Identity Theft Law (720 ILCS 5/16G–15(a)(7) (West 2008)). Section 16G–15(a)(7) provides that "[a] person commits the offense of identity theft when he or she knowingly *** uses any personal identification information or personal identification document of another for the purpose of gaining access to any record of the actions taken, communications made or received, or other activities or transactions of that person, without the prior express permission of that person." 720 ILCS 5/16G–15(a)(7) (West 2008). The indictment alleged that defendant "knowingly used personal identification information of Gabriela Vasquez, being Gabriela

Vazquez's name, date of birth, and address, to gain access to a record of actions taken, activities or transactions of Gabriela Vazquez, without the prior express permission of Gabriela Vasquez." A person convicted of violating section 16G–15(a)(7) for the first time is guilty of a Class 3 felony, punishable by up to five years in prison. 720 ILCS 5/16G–15(d)(2) (West 2008); 730 ILCS 5/5–4.5–40(a) (West 2008).

Defendant filed a motion to dismiss the indictment, seeking dismissal on three separate due process grounds. First, defendant maintained that section 16G–15(a)(7) is unconstitutionally vague because its prohibitions are not sufficiently definite, when measured by common understanding and practices, to give a person of ordinary intelligence fair warning as to what conduct is prohibited. Second, defendant argued that the charging instrument is impermissibly vague. And finally, defendant argued that section 16G–15(a)(7) fails to require a culpable mental state and therefore can be read to apply to conduct that is wholly innocent.

After a hearing on the motion to dismiss the indictment, the circuit court denied the first two grounds for dismissal. But it granted the motion to dismiss on the third ground, finding that the statutory subsection at issue lacks a culpable mental state and captures innocent conduct, thus violating due process. The trial court later entered an order under Illinois Supreme Court Rule 18 (Ill. S. Ct. R. 18 (eff. Sept. 1, 2006)), indicating that section 16G–15(a)(7) is unconstitutional on its face as violative of substantive due process under the fourteenth amendment of the United States Constitution (U.S. Const., amend. XIV) and article I, section 2, of the Illinois Constitution (Ill. Const. 1970, art. I, §2). The court further found that the statute could not be reasonably construed in a manner that preserves its constitutionality and that the judgment of dismissal could not rest on any alternative grounds. The State properly appealed directly to this court as a matter of right. See Ill. S. Ct. R. 603 (eff. Oct. 1, 2010). We now consider the constitutionality of section 16G–15(a)(7) of the identity theft statute.

## ANALYSIS

We begin by noting that the question of whether a statute is unconstitutional is a question of law, which this court reviews *de*

*novo. People v. Johnson*, 225 Ill. 2d 573, 584 (2007). All statutes are presumed constitutional, and the party challenging the constitutionality of a statute has the burden of clearly establishing that it violates the constitution. *People v. Carpenter*, 228 Ill. 2d 250, 267 (2008); *Johnson*, 225 Ill. 2d at 584. Under the banner of its police power, the legislature has wide discretion to fashion penalties for criminal offenses, but this discretion is limited by the constitutional guarantee of substantive due process, which provides that a person may not be deprived of liberty without due process of law. *People v. Wright*, 194 Ill. 2d 1, 24 (2000). When the challenged statute does not affect a fundamental constitutional right, the appropriate test for determining its constitutionality is the highly deferential rational basis test. *Carpenter*, 228 Ill. 2d at 267; *Johnson*, 225 Ill. 2d at 584-85. Under that test, a statute will be sustained if it " 'bears a reasonable relationship to a public interest to be served, and the means adopted are a reasonable method of accomplishing the desired objective.' " *Wright*, 194 Ill. 2d at 24 (quoting *People v. Adams*, 144 Ill. 2d 381, 390 (1991)).

Accordingly, we must first determine the statute's purpose in order to assess whether the prohibitions contained in section 16G–15(a)(7) reasonably implement that purpose. The language of the statute itself is the best indicator of the legislative intent and statutory purpose. *Carpenter*, 228 Ill. 2d at 268. We will therefore look to the specific language of the Identity Theft Law to determine its purpose.

The legislative declaration in section 16G–5(a) of the Identity Theft Law states that it is the "public policy of this State that the substantial burden placed upon the economy *** as a result of the rising incidence of identity theft and the negative effect of this crime on the People of this State and its victims is a matter of grave concern *** and therefore identity theft shall be identified and dealt with swiftly and appropriately." 720 ILCS 5/16G–5(a) (West 2008). Section 16G–5(b) continues by declaring that the "widespread availability and unauthorized access to personal identification information have led and will lead to a substantial increase in identity theft related crimes." 720 ILCS 5/16G–5(b) (West 2008). From the foregoing, it is clear, and both parties agree, that the purpose of the identity theft statute is to protect the economy and people of Illinois from the ill-effects of identity theft.

Crucial to defendant's argument that section 16G–15(a)(7) is unconstitutional is the charge that it does not contain a culpable mental state and therefore results in potentially punishing wholly innocent conduct. This court has repeatedly held that a statute violates the due process clauses of both the Illinois and United States Constitutions if it potentially subjects wholly innocent conduct to criminal penalty without requiring a culpable mental state beyond mere knowledge. See, *e.g.*, *Carpenter*, 228 Ill. 2d at 269 (struck down a statute that "potentially criminalizes innocent conduct, as it visits the status of a felon upon anyone who owns or operates a vehicle he or she knows to contain a false or secret compartment, defined as one intended and designed to conceal the compartment or its contents from law enforcement officers"); *Wright*, 194 Ill. 2d at 25, 28 (struck down record-keeping statute because it "potentially subjects *** innocent conduct to *** a severe penalty"); *In re K.C.*, 186 Ill. 2d 542, 549, 553 (1999) (invalidated criminal trespass to a vehicle statute that prohibited entering a vehicle whenever it was done "knowingly and without authority" because it "potentially punish[ed] wholly innocent conduct without requiring proof of a culpable mental state"); *People v. Zaremba*, 158 Ill. 2d 36, 42-43 (1994) (theft statute did not bear a reasonable relationship to its purpose because "it potentially subject[ed] wholly innocent conduct to punishment" and failed to require a culpable mental state other than that the defendant do the prohibited actions "knowingly"); *People v. Wick*, 107 Ill. 2d 62, 66 (1985) ("Because aggravated arson as defined by the statute does not require an unlawful purpose in setting a fire, however, the statute as presently constituted sweeps too broadly by punishing innocent as well as culpable conduct in setting fires.").

Simply put, this court has held that in such cases, a statute fails the rational basis test because it does not represent a reasonable method of preventing the targeted conduct. See *Carpenter*, 228 Ill. 2d at 269; *Wright*, 194 Ill. 2d at 25. In *Carpenter*, we considered the facial constitutionality of a statute that banned false or secret compartments in automobiles. Because the statute in that case lacked a culpable mental state beyond both knowledge of the compartment's capacity to conceal and an intent to conceal, we held that the statute "d[id] not contain a reasonable means of preventing the targeted conduct, and it therefore violate[d] due process." *Carpenter*, 228 Ill. 2d at 269.

In *Wright*, we considered the constitutionality of an automobile record-keeping statute designed to prevent the transfer or sale of stolen motor vehicles (see 625 ILCS 5/5–401.2(a) (West 1996)). In declaring the statute unconstitutional on its face, we held that it could not "withstand scrutiny under the rational basis test." *Wright*, 194 Ill. 2d at 25. We found that "[i]n analogous cases, this court and courts in other jurisdictions have held that criminal statutes that potentially punish innocent conduct violate due process principles because they are not reasonably designed to achieve their purposes." *Wright*, 194 Ill. 2d at 25.

In the present case, section 16G–15(a) of the Identity Theft Law attempts to implement its statutory purpose of preventing identity theft as follows:

> "(a) A person commits the offense of identity theft when he or she knowingly:
>
> > (1) uses any personal identifying information or personal identification document of another person to fraudulently obtain credit, money, goods, services, or other property, or
> >
> > (2) uses any personal identifying information or personal identification document of another with intent to commit any felony theft or other felony violation of State law not set forth in paragraph (1) of this subsection (a), or
> >
> > (3) obtains, records, possesses, sells, transfers, purchases, or manufactures any personal identification information or personal identification document of another with intent to commit or to aid or abet another in committing any felony theft or other felony violation of State law, or
> >
> > (4) uses, obtains, records, possesses, sells, transfers, purchases, or manufactures any personal identification information or personal identification document of another knowing that such personal identification information or personal information documents were stolen or produced without lawful authority, or
> >
> > (5) uses, transfers, or possesses document-making implements to produce false identification or false

documents with knowledge that they will be used by the person or another to commit any felony theft or other felony violation of State law, or

(6) uses any personal identification information or personal identification document of another to portray himself or herself as that person, or otherwise, for the purpose of gaining access to any personal identification information or personal identification document of that person, without the prior express permission of that person, or

(7) *uses any personal identification information or personal identification document of another for the purpose of gaining access to any record of the actions taken, communications made or received, or other activities or transactions of that person, without the prior express permission of that person.*" (Emphasis added.) 720 ILCS 5/16G–15(a) (West 2008).

All seven of the subparagraphs in section 16G–15(a) require at least a mental state of mere knowledge, as introductory paragraph (a) makes clear: "A person commits the offense of identity theft when he or she *knowingly*" does anything proscribed by the different offenses in subparagraphs (a)(1) through (a)(7). (Emphasis added.) 720 ILCS 5/16G–15(a) (West 2008). The first five offenses listed in subparagraphs (a)(1) through (a)(5), however, also require the additional element of criminal intent or knowledge. In other words, they require a criminal purpose in addition to the general knowledge that one is committing the actions specified. Subparagraphs (a)(1) through (a)(5) are not at issue in this case and clearly do not fall within the parameters of the line of cases that deal with statutes that potentially punish innocent conduct. Unlike the offenses described in subparagraphs (a)(1) through (a)(5), however, subparagraph (a)(7) clearly does not require criminal intent, criminal knowledge, or a criminal purpose in order to subject one to a felony conviction and punishment.[1]

---

[1]Subparagraph (a)(6) of the statute also does not appear to require criminal intent, criminal knowledge or a criminal purpose. See 720 ILCS

Section 16G–15(a)(7) requires only that a person knowingly use any "*personal identification information* or personal identification document of another for the purpose of gaining access to any record of the actions taken, communications made or received, or other activities or transactions of that person, without the prior express permission of that person." (Emphasis added.) 720 ILCS 5/16G–15(a)(7) (West 2008). "Personal identifying information" is defined for purposes of the statute so as to include everything from a person's name, address, date of birth, or telephone number to obviously more confidential identifying information such as social security numbers, bank account numbers or credit card numbers. See 720 ILCS 5/16G–10(b) (West 2008). Because any one of the pieces of information listed qualifies as "personal identifying information" for purposes of committing the offense listed in section 16G–15(a)(7), a person who simply uses someone's name for the purpose of gaining access to any record of the actions taken, communications made or received, or other activities or transactions of that person, without the prior express permission of that person, is guilty of a Class 3 felony.

The net result is that section 16G–15(a)(7) would potentially punish as a felony a wide array of wholly innocent conduct. For example, doing a computer search through Google or some other search engine or through a social networking site such as Facebook or MySpace, by entering someone's name, could uncover numerous records of actions taken, communications made or received, or other activities or transactions of that person. Thus, the statute as it currently reads would criminalize such innocuous conduct as someone using the internet to look up how their neighbor did in the Chicago Marathon. Moreover, a husband who calls a repair shop for his wife, without her "prior express permission," to see if her car is ready, what was wrong, and how much the repair bill is, would be seeking information in violation of the statute. A person who calls an employer of a friend to see if the friend is working or on vacation, and who receives an answer to his inquiry would be a potential felon under the statute. The person might be told that the friend resigned (record of actions taken), that he called in sick (record of communications made

5/16G–15(a)(6) (West 2008). That subsection, however, is not at issue here, and we make no ruling with respect to its constitutionality.

or received), or that he is on vacation sailing in the Carribean (record of activities of the person). A person who calls a hotel to see if her husband has registered, checked in yet, or made a reservation, without getting his express permission first, is subject to felony imprisonment. The statute could also likely quell the work of biographers, journalists or anyone attempting to do a family genealogy, which all might require using personal identifying information to gain access to records of communications, activities or actions of a person.

The Identity Theft Law does contain some narrow exemptions that do not appear to affect the examples noted above. See 720 ILCS 5/16G–40 (West 2008). Among other things, section 16G–40 states that the Identity Theft Law does not prohibit the capture or transmission of personal identifying information in "the ordinary and lawful course of business"; nor does it apply to peace officers who are in lawful performance of their duties, or to "activities authorized under any other statute." See 720 ILCS 5/16G–40 (West 2008).

The problem with section 16G–15(a)(7), then, is that it lacks a culpable mental state, as it does not require a criminal purpose for a person to be convicted of a felony. Because the statute potentially punishes a significant amount of wholly innocent conduct not related to the statute's purpose, we simply do not believe that this is a rational way of addressing the problem of identity theft.

The State argued before the circuit court that identity theft itself is less likely to occur if the sort of information banned by section 16G–15(a)(7) can be prevented from being gathered in the first place. This may be true. But what is wrongful is not the gathering of such information by using a person's name or address, but rather gathering or using such information for the purpose of committing identity theft. We note that in addition to our established case law noted above, "courts of other jurisdictions have similarly struck down laws" falling under the same category as the one before us "as being violative of substantive due process, if the prohibition is 'too sweeping in encompassing activity which is wholly innocent.' " *D.P. v. State*, 705 So. 2d 593, 600 (Fla. Dist. Ct. App. 1997) (Green, J., dissenting); see also *Wyche v. State*, 619 So. 2d 231, 235-37 (Fla. 1993) (struck down ordinance prohibiting a "known prostitute" from engaging in certain routine activities); *State v. Saiez*, 489 So. 2d 1125, 1127-29 (Fla. 1986) (invalidated statute criminalizing mere possession of a credit

card embossing machine without regard to the intent of the possessor); *People v. Munoz*, 172 N.E.2d 535 (N.Y. 1961) (struck down law that prohibited the possession of "a knife or sharp pointed or edged instrument" by a person under the age of 21); *People v. Bunis*, 172 N.E.2d 273 (N.Y. 1961) (held invalid a law that prohibited the knowing sale of a magazine or other publication without a cover); *State v. Birdsell*, 104 So. 2d 148 (La. 1958) (invalidated law that prohibited possession of a hypodermic needle, regardless of the use for which the needle was possessed); but, *c.f.*, *Village of Hoffman Estates v. The Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 497 n.9 (1982) (noted ordinance banning drug paraphernalia was not irrational means of discouraging drug use even though there might be innocent uses for the banned items; but court did not foreclose a substantive due process challenge to a statute that bans or punishes a significant amount of innocent conduct in other contexts).

*Bunis* is particularly instructive. There, New York's highest court invalidated a state law that prohibited the sale of magazines and other publications without covers, regardless of the circumstances. The court noted that "[w]hat was wrongful [was] not the sale of coverless magazines, but rather their sale by a vendor who takes part in a scheme to defraud a magazine publisher." *Bunis*, 172 N.E.2d at 274. The court continued by correctly reasoning as follows:

> "Admittedly, by denominating as criminal all sales, [the statute] necessarily tends to prevent corrupt sales. But, even were we to suppose that it had power to prohibit such corrupt sales, it is unreasonable and beyond the legitimate exercise of the police power for the Legislature to interdict all sales, permissible and illicit alike, in order to prevent those which are illicit. The Legislature may not validly make it a crime to do something which is innocent in itself merely because it is sometimes done improperly, sometimes attended by improper motives or done as part of an illegal scheme." *Bunis*, 172 N.E.2d at 274.

Similarly, we find that a statute, such as section 16G–15(a)(7), which criminalizes the use of mere names, or other commonly and publicly available information such as addresses and phone numbers, for the purpose of gaining access to innocent information about people without any criminal intent, purpose or knowledge is an invalid

exercise of the police power and is not reasonably related to the purpose of the statute.

To avoid the constitutional problem, the State suggests that this court read a culpable mental state into the statute so that a criminal purpose is required for a violation. This court rejected the same argument in *Wright* and *Carpenter* under similar circumstances, with both courts holding that where a statute already contains a mental state of mere knowledge, this court cannot read a criminal-purpose requirement into the statute. *Carpenter*, 228 Ill. 2d at 270; *Wright*, 194 Ill. 2d at 29-30. *Wright* specifically distinguished *People v. Tolliver*, 147 Ill. 2d 397 (1992), which was "able to imply the mental state of knowledge plus criminal purpose as an element of [the statute at issue there] because that provision contained no mental state." *Wright*, 194 Ill. 2d at 29.

*Carpenter* relied upon *Wright* to find that if a statute already contains one or more mental states and none of them provide culpability, a court may not add a culpable mental state. *Carpenter*, 228 Ill. 2d at 270. *Carpenter* then distinguished *People v. Bailey*, 167 Ill. 2d 210 (1995). In *Bailey*, this court interpreted the stalking statute to require the prohibited conduct be performed "without lawful authority," even though those words were not in the statute. See *Carpenter*, 228 Ill. 2d at 271-72; *Bailey*, 167 Ill. 2d at 224. The stalking statute at issue in *Bailey* provided that a person committed the offense "when he or she transmits to another person a threat with the intent to place that person in reasonable apprehension of death, bodily harm, sexual assault, confinement or restraint, and in furtherance of the threat knowingly does any one or more of the following acts on at least 2 separate occasions." 720 ILCS 5/12–7.3(a) (West 1992). The second part of the statute then required that the defendant follow "the person, other than within the residence of the defendant," or place "the person under surveillance by remaining present outside" any one of a number of locations specified in the statute. 720 ILCS 5/12–7.3(a)(1), (a)(2) (West 1992). *Carpenter* noted that the holding in *Bailey* was limited to its facts. *Carpenter*, 228 Ill. 2d at 272. Moreover, *Carpenter* observed that interpreting the statute in *Bailey* to include the phrase "without lawful authority" was probably not necessary because the statute did not punish any innocent conduct as written, as it already contained "a

requirement of 'knowing' conduct in furtherance of a clearly culpable objective, *i.e.*, the intent to place another person in 'reasonable apprehension of death, bodily harm, sexual assault, confinement or restraint.'" *Carpenter*, 228 Ill. 2d at 272 (quoting 720 ILCS 5/12–7.3 (West 1992)). Unlike the statute in *Bailey*, section 16G–15(a)(7) at issue in this case does not prohibit conduct that is *malum in se*. Accordingly, we likewise find that the statute in *Bailey* cannot be compared with section 16G–15(a)(7), which criminalizes the wholly innocent conduct of using a mere name or address of a person to gain information about the actions taken by that person.

Similarly, the State's reliance upon *People v. Williams*, 235 Ill. 2d 178 (2009), is misplaced. There, we upheld the unidentified use of sound recordings statute, contained in section 16–8 of the Criminal Code of 1961 (720 ILCS 5/16–8 (West 2004)), against a substantive due process challenge. In doing so, we distinguished *Carpenter*, *Wright*, *K.C.*, *Zaremba* and *Wick* on the basis that unlike the statutes in those cases, the unidentified recordings statute "capture[d] the precise activities that it was meant to punish." *Williams*, 235 Ill. 2d at 209. We rejected the notion that section 16–8 potentially punished any innocent conduct (*Williams*, 235 Ill. 2d at 212) and further noted that if any additional intent elements were supplied to section 16–8, it would defeat the legislative purpose in enacting the statute (*Williams*, 235 Ill. 2d at 210-11). In contrast to the statute in *Williams*, section 16G–15(a)(7) potentially punishes a wide array of innocent conduct beyond what the legislature could have reasonably meant to punish. We therefore conclude that the present case falls squarely under the *Carpenter-Wick* line of cases.

Finally, the State argues that we should abandon the *Carpenter-Wick* line of precedent and its requirement that statutes contain a culpable mental state to avoid punishing wholly innocent conduct. The State claims that we should abandon our precedent because it is at odds with the United States Supreme Court's interpretation of substantive due process under the federal constitution. The State's claim that there is a divergence in our jurisprudence from that of the United States Supreme Court in this area is not correct.

In support of its argument, the State relies upon *United States v. Salerno*, 481 U.S. 739 (1987), for the following principle:

"A facial challenge to a legislative Act is, of course, the

-11-

most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid. The fact that the [statute] might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid ***." *Salerno*, 481 U.S. at 745.

The State also relies upon the proposition that a " 'law need not be in every respect logically consistent with its aims to be constitutional[;] [i]t is enough that there is an evil at hand for correction, and that it might be thought that the particular legislative measure was a rational way to correct it.' " *United States v. Comstock*, 560 U.S. ___, ___, 130 S. Ct. 1949, 1966 (2010) (Kennedy, J., concurring) (quoting *Williamson v. Lee Optical of Oklahoma, Inc.*, 348 U.S. 483, 487-88 (1955)).

The case law relied upon by the State informs our constitutional analysis, but ultimately is not controlling of the outcome of the present case because none of the State's cases involved a penal statute that lacked a culpable mental state and thereby criminalized a significant amount of innocent conduct. Rather, the principles noted here by the State were used as general aids to assessing the constitutionality of statutes that were regulatory or civil in nature and that did not involve any criminal prohibitions. The State's argument "ignores the particular care [the United States Supreme Court] ha[s] taken to avoid construing a statute to dispense with *mens rea* where doing so would 'criminalize a broad range of apparently innocent conduct.' " *Staples v. United States*, 511 U.S. 600, 610 (1994) (quoting *Liparota v. United States*, 471 U.S. 419, 426 (1985)); see also *City of Houston, Texas v. Hill*, 482 U.S. 451, 459 (1987) ("Criminal statutes must be scrutinized with particular care [citation]; those that make unlawful a substantial amount of constitutionally protected conduct may be held facially invalid even if they also have legitimate application."). The United States Court of Appeals, Sixth Circuit, has also observed that "where a criminal statute prohibits and punishes seemingly innocent or innocuous conduct that does not in itself furnish grounds to allow the presumption that defendant knew his actions must be wrongful, conviction without some other, extraneous proof of blameworthiness or culpable mental state is forbidden by the Due Process Clause." *Stanley v. Turner*, 6 F.3d 399, 404 (6th Cir. 1993). Moreover, as

previously noted, in addition to our own *Carpenter-Wick* line of precedent, courts in many other jurisdictions have avoided criminalizing innocent conduct by proceeding to strike down criminal statutes as facially unconstitutional where those statutes had the potential to punish innocent conduct. See, *e.g.*, *Wyche*, 619 So. 2d at 235-37; *Saiez*, 489 So. 2d at 1127-29; *Munoz*, 172 N.E.2d at 539-40; *Bunis*, 172 N.E.2d at 275; *Birdsell*, 104 So. 2d at 153-54; see also *People v. Lardie*, 551 N.W.2d 656, 669 n.53 (Mich. 1996) (a criminal statute that lacks a criminal intent element may be upheld only if it does not punish conduct "innocent or innocuous in itself" and the law is designed for the protection of the public health and safety and has no common law background that included a particular criminal intent).

CONCLUSION

For the foregoing reasons, we find no solid reason to depart from our precedent in *Carpenter*, *Wright*, *K.C.*, *Zaremba*, and *Wick*. Applying that precedent to this case, we conclude that defendant met her burden of showing that section 16G–15(a)(7) is facially unconstitutional. We emphasize that our ruling does not affect any of the other provisions of the Identity Theft Law, including those contained in sections 16G–15(a)(1) through (a)(6). Because section 16G–15(a)(7) aims at the laudable goal of combating identity theft, we encourage the legislature to consider curing the constitutional defect in the provision.

We therefore affirm the judgment of the circuit court of Kane County, which found section 16G–15(a)(7) to be unconstitutional under both the state and federal constitutions.

Affirmed.

-13-