# Illinois Official Reports

## Appellate Court

---

### *People v. Gueye*, 2018 IL App (1st) 152826

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ABDOURHMAN GUEYE, Defendant-Appellant. |
| | |
| District & No. | First District, Sixth Division<br>Docket No. 1-15-2826 |
| | |
| Filed<br>Rehearing denied | June 29, 2018<br>July 24, 2018 |
| | |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 14-CR-10077; the Hon. William H. Hooks, Judge, presiding. |
| | |
| Judgment | Affirmed. |
| | |
| Counsel on Appeal | Michael J. Pelletier, Patricia Mysza, and Erin Sostock, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg and Brian K. Hodes, Assistant State's Attorneys, of counsel), for the People. |
| | |
| Panel | JUSTICE CONNORS delivered the judgment of the court, with opinion.<br>Presiding Justice Hoffman and Justice Delort concurred in the judgment and opinion. |

**OPINION**

¶ 1     Defendant, Abdourhman Gueye, was convicted of counterfeit trademark violation following a bench trial and was sentenced to one year of probation. On appeal, defendant contends that the State failed to prove him guilty beyond a reasonable doubt of violating the Counterfeit Trademark Act (Act) (765 ILCS 1040/2 (West 2014)), where he lacked the intent to deceive. Defendant argues in the alternative that the Act, which criminalizes knowingly selling a product with a counterfeit mark, violates state and federal constitutional guarantees of due process. For the following reasons, we affirm.

¶ 2                                    BACKGROUND

¶ 3     Defendant was charged with violating section 2 of the Act. The indictment stated:
       "[Defendant] knowingly kept, or had in his possession with the intent that the same should be sold or disposed of, any goods or merchandise to which any counterfeit mark or imitation trademarks were attached or affixed or in which any counterfeit mark or imitation trademarks were printed, painted, stamped or impressed *to wit*: items bearing the counterfeit trademark of Michael Kors, Burberry, and Tory Burch of which he was not the rightful owner of such trademarks and he knowingly sold, offered for sale, or held for sale fewer than 100 counterfeit items, and he has previously been convicted of a violation of the *** Act."

¶ 4     Defendant waived his right to a jury. At the bench trial, Officer Daniel Stapleton testified that on May 17, 2014, at approximately 2 p.m., he was assigned to work on undercover buys of counterfeit purses. Officer Stapleton testified that he was working with Lindsey Thompson, from the Department of Homeland Security, and that he was assigned to do an undercover buy on the corner of E. Chicago Avenue and N. Rush Street. Officer Stapleton testified that on the date in question, defendant was standing at that corner by his "purse stand," which was a rack and table with numerous purses hanging from it. Agent Thompson handled the purses and looked at them. Officer Stapleton asked defendant the price of the purses Agent Thomas was holding, and defendant responded that it was $20. Officer Stapleton testified that he asked defendant "why a Michael Kors purse was only twenty dollars." Officer Stapleton testified that, "[Defendant] said they were fake. That's why they were so cheap." Officer Stapleton then purchased the purse.

¶ 5     Officer Stapleton testified that he and Agent Thompson then took the purse to Kevin Read, a private investigator with whom they were working, for inspection. Officer Stapleton testified that after conversing with Read, other officers they were working with arrested defendant.

¶ 6     Read testified that he is a licensed private investigator, and that one of his responsibilities is to work with trademark companies, and to assist them in investigating individuals or fixed locations that "sell counterfeit merchandise." Read testified that he has done work for Nike, Louis Vuitton, Burberry, Tory Burch, Chanel, Michael Kors, and others. Read testified that he is trained by brand owners on how to "identify counterfeit merchandise."

¶ 7     Read testified that he attended trainings with these brands, wherein he met with a representative from each company. Read is then provided with training materials, including direction on how to identify counterfeit merchandise. Read specifically testified that the brands "provide me with samples of both counterfeit and authentic merchandise," as well as

information on how to specifically identify "counterfeit merchandise as opposed to an authentic item."

¶ 8     The State then expressed that it wished to qualify Read as an expert in identifying counterfeit purses. Defense counsel made a request to ask the witness questions regarding his qualifications as an expert. Defense counsel then asked Read what his definition of counterfeit was, to which Read replied that if an item depicted a trademark, but that item was not manufactured by that brand company, it would be deemed to be counterfeit. Defense counsel then asked Read if there was a distinction between counterfeit and imitation, to which Read replied that the item has to have the actual trademark affixed to the item, and if the trademark is affixed to the item, but the item was not manufactured by that company, then it is a counterfeit item. The court then found Read to be an "expert witness in the area of counterfeit purse identification."

¶ 9     Read testified that his role on the day in question was to identify the "suspect counterfeit merchandise." Read testified that Officer Stapleton and Agent Thompson tendered a handbag to him, which they had purchased from defendant. It was orange in color, and depicted the trademark for Michael Kors, "[s]pecifically the MK marking with the word Michael Kors." Read stated that he pulled on the label and noticed that the label was affixed through two metal brackets onto the bag. Read testified that on an authentic bag, a hole would not have been cut into the bag because that causes the label to easily pop out. He then popped the label out in open court.

¶ 10    Read also testified that a silicone gel pack was inside the item, which was indicative that it was counterfeit, and that it was "probably shipped from China, where it was manufactured." Read also testified that if it was an authentic Michael Kors bag, it would have an inventory number affixed to the inside of the bag. Read testified that the hardware would also depict the Michael Kors trademarks if it was authentic. The item in question had zippers that did not depict a trademark. After examining the item, Read determined that it was a counterfeit Michael Kors purse.

¶ 11    Read further testified that on the afternoon in question, he heard defendant say that he was selling the handbags to make a living, and that he knew the handbags were fake. After defendant was arrested, Read inspected other items at defendant's purse stand. He found handbags and wallets "depicting various trademarks." Read testified that there were items depicting trademarks of Tory Burch, Michael Kors, and Burberry.

¶ 12    Read then testified that he inspected a counterfeit Tory Burch purse. He noticed "that the Tory Burch, the T, the one going up and the one going down, which is the registered trademark for Tory Burch." Read testified that the hardware did not display the Tory Burch trademark and that an authentic purse would have the trademark on the hardware. Read testified that the stitching was frayed, and that if it was an authentic handbag, there would be an identification number on the inside of the bag. It was Read's opinion that the handbag in question was a counterfeit item.

¶ 13    The State then showed Read another purse that had been recovered from defendant on the day in question. Read testified that the purse was not a counterfeit purse. Read testified that although it had a logo on it, the logo was not a registered trademark, and therefore it was not a counterfeit purse.

¶ 14    The State then asked to change the indictment to eliminate the word "Burberry" because there were "additional inventories that we didn't bring to court, to the courtroom today. There

is no Burberry in these exhibits." The trial court noted that if the State failed to prove beyond a reasonable doubt that one of the items was a Burberry item, "that would not eliminate the whole of the charge." The parties then stipulated as to several exhibits that depicted the certified copies of trademarks for Tory Burch and Michael Kors. The State also presented a certified copy of defendant's conviction for violating the Act on March 13, 2014. It was a Class A misdemeanor, for which defendant received one year of conditional discharge.

¶ 15    The trial court then had the parties submit additional briefs discussing the case of *People v. Revlon, Inc.*, 99 Ill. App. 2d 463 (1968), and its applicability to the case at bar. After hearing argument and reading the briefs, the trial court found defendant guilty of selling counterfeit Michael Kors and Tory Burch handbags, and sentenced him to one year of probation. Defendant now appeals.

¶ 16                                    ANALYSIS

¶ 17    On appeal, defendant contends that the State failed to prove him guilty of violating section 2 of the Act where it failed to prove that he had the intent to deceive consumers. Alternatively, defendant contends that the Act is unconstitutional.

¶ 18                        Proof Beyond a Reasonable Doubt

¶ 19    In analyzing a claim for sufficiency of the evidence, we must determine whether, taking the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *In re Q.P.*, 2015 IL 118569, ¶ 24. It is the responsibility of the trier of fact to resolve conflicts, and weigh and draw reasonable inferences from the testimony and other evidence. *In re Jonathon C.B.*, 2011 IL 107750, ¶ 59. The trier of fact need not be satisfied beyond a reasonable doubt as to each link in the chain of circumstances. *Id.* ¶ 60. Instead, it is sufficient if all the evidence, taken together, satisfies the trier of fact beyond a reasonable doubt of the defendant's guilt. *Id.* The trier of fact is not required to disregard inferences that flow normally from the evidence, nor to seek all possible explanations consistent with innocence and elevate them to reasonable doubt. *Id.* A conviction will be reversed only where the evidence is so unreasonable, improbable, or unsatisfactory that a reasonable doubt of the defendant's guilt remains. *Id.* ¶ 64.

¶ 20    We start by reciting the section of the Act under which defendant was convicted. Section 2 of the Act states:

"Whoever uses a counterfeit mark or imitates any trade-mark or service mark of which he or she is not the rightful owner or in any way utters or circulates any counterfeit or imitation of such a trade-mark or service mark or knowingly uses such counterfeit or imitation or *knowingly sells or disposes of or keeps or has in his or her possession, with intent that the same shall be sold or disposed of*, any goods, wares, merchandise, or other product of labor or service, to which any such counterfeit or imitation is attached or affixed, or on which any such counterfeit or imitation is printed, painted, stamped or impressed, or knowingly sells or disposes of any goods, wares, merchandise or other product of labor contained in any box, case, can, or package to which or on which any such counterfeit or imitation is attached, affixed, printed, painted, stamped or impressed, or keeps or has in his possession with intent that the same shall be sold or disposed of *** shall be guilty of a Class A misdemeanor for each offense, or in the

case of a counterfeit item shall be punished as provided in Section 8." (Emphasis added.) 765 ILCS 1040/2 (West 2014).

¶ 21    In his indictment, defendant was charged with violating section 2 of the Act in that:

"He knowingly kept, or had in his possession with the intent that the same should be sold or disposed of, any goods or merchandise to which any counterfeit mark or imitation trademarks were attached or affixed or in which any counterfeit mark or imitation trademarks were printed, painted, stamped or impressed *to wit*: items bearing the counterfeit trademark of Michael Kors, Burberry, and Tory Burch of which he was not the rightful owner of such trademarks and he knowingly sold, offered for sale, or held for sale fewer than 100 counterfeit items, and he has previously been convicted of a violation of the *** Act."

¶ 22    Accordingly, the elements of the offense that the State had to prove beyond a reasonable doubt were that defendant (1) knowingly kept or had in his possession, (2) with intent that the same shall be sold or disposed of, (3) any goods or merchandise to which a counterfeit mark was attached or affixed, and (4) that he was not the rightful owner of such trademark depicted. *Id.* The only element that the parties contest is the third element: whether the item sold to Officer Stapleton was affixed with a counterfeit mark.

¶ 23    A counterfeit item is defined in section 1 of the Act as "any goods, components of goods, or services made, produced or knowingly sold or knowingly distributed that use or display a counterfeit mark." *Id.* § 1. A " '[c]ounterfeit mark' " means a "spurious mark":

"(1) That is applied to or used in connection with any goods, services, labels, patches, fabric, stickers, wrappers, badges, emblems, medallions, charms, boxes, containers, cans, cases, hangtags, documentation, or packaging or any other components of any type or nature that are designed, marketed, or otherwise intended to be used on or in connection with any goods or services;

(2) That is identical with, or substantially indistinguishable from, a mark registered in this State, any state, or on the principal register in the United States Patent and Trademark Office and in use, whether or not the defendant knew such mark was so registered; and

(3) The application or use of which either (i) is likely to cause confusion, to cause mistake, or to deceive; or (ii) otherwise intended to be used on or in connection with the goods or services for which the mark is registered." *Id.*

¶ 24    Accordingly, to prove that the handbags at defendant's purse stand displayed counterfeit marks, the State had to prove that the marks were affixed to the handbags, and that such marks were identical to, or substantially indistinguishable from, the registered Michael Kors and Tory Burch trademarks. Here, the State presented evidence that the label on the handbag sold to Officer Stapleton contained an identical mark to the registered trademark of Michael Kors, which consisted of "MK" followed by the words "Michael Kors."

¶ 25    The question then becomes whether the application of the Michael Kors trademark and the Tory Burch trademark to the handbags in question was "likely to cause confusion, to cause mistake, or to deceive." *Id.* The plain language of the statute makes clear that the "likely to cause confusion, mistake, or to deceive" portion of the definition of the term "counterfeit mark" is in connection with "application" of the spurious mark to the item that is to be sold. In other words, the handbags in question became counterfeit items the moment the registered

trademarks of Michael Kors and Tory Burch were affixed to them because the application of those registered trademarks were "likely to cause confusion, to cause mistake, or to deceive." Applying a registered trademark to a handbag that was not manufactured by the registered trademark holder is certainly likely to cause confusion, to cause mistake, or to deceive because only an expert, upon close inspection, would know that the handbag bearing a registered trademark was not manufactured by the trademark holder. Accordingly, viewing this evidence in a light most favorable to the State, we find that the trial court did not abuse its discretion in finding that the State proved beyond a reasonable doubt that the handbags in question bore counterfeit marks and that defendant violated section 2 of the Act.

¶ 26    Defendant maintains, relying on *Revlon*, that an intent to deceive is implicit in the term "counterfeit," and therefore the handbag was not a counterfeit item because defendant had no intention of deceiving Officer Stapleton when he told Officer Stapleton that the bag was "fake." However, *Revlon*, which was decided in 1968, was published before any amendments to the statute in question had been made. Most importantly, the statute in question in *Revlon* did not contain a definition for the term "counterfeit item" or "counterfeit mark." Accordingly, the case analyzed the term "counterfeit" in the predecessor to section 2 of the Act, using a different definition than that which exists in the current version of the Act.

¶ 27    In the *Revlon* decision, Revlon, Inc. was charged with violating the Illinois trademark tatute (statute) (Ill. Rev. Stat. 1963, ch. 140, ¶ 25), in that it used Clairol's registered trademark on its boxes of hair dye without Clairol's consent. *Revlon*, 99 Ill. App. 2d at 464-65. Section 25 of the statute provided, "Every person who shall use or display a trade-mark of which he is not the lawful owner in any manner not authorized by such owner shall be deemed guilty of a misdemeanor ***." Ill. Rev. Stat. 1963, ch. 140, ¶ 25. The only issue on appeal was the "narrow issue" of whether the statute intended to proscribe conduct in the absence of any deception. *Revlon*, 99 Ill. App. 2d at 466. The court noted that since there were no cases construing or applying the statute, it would look to other sections of the 1955 revision of chapter 140. *Revlon*, 99 Ill. App. 2d at 468. The court discussed section 24 of the statute, which stated:

> "Whoever counterfeits or imitates any trademark of which he is not the rightful owner or in any way utters or circulates any counterfeit or imitation of such a trade-mark or knowingly uses such counterfeit or imitation or knowingly sells or disposes of or keeps or has in his possession, with intent that the same shall be sold or disposed of, any goods, wares, merchandise, or other product of labor to which any such counterfeit or imitation is attached or affixed, or on which any such counterfeit or imitation is printed, painted, stamped or impressed, or knowingly sells or disposes of any goods, wares, merchandise or other product of labor contained in any box, case, can or package to which or on which any such counterfeit or imitation is attached *** shall be punished ***." Ill. Rev. Stat. 1963, ch. 140, ¶ 24.

¶ 28    The court then stated, " 'Counterfeit' means 'false representation' or 'imitation with intent to deceive,' thus it may be said that something which is counterfeit is an imitation but it is more than an imitation, it is imitation plus deception." *Revlon*, 99 Ill. App. 2d at 471 (quoting 10 Words & Phrases, 40). The court stated that, "Deception does not arise from mere imitation of a trade-mark but does arise from imitation and use in connection with the promotion of goods or services." *Id.* The court then concluded that because section 25 of the statute, which

penalized a person for there mere "use or display" of a trademark, and did not include the word "counterfeit" or any element of deception, failed to state an offense. *Id.* at 473.

¶ 29    In the case at bar, on the other hand, the offense for which defendant was charged—knowingly selling items to which a counterfeit mark is affixed—includes the term "counterfeit mark," which is now defined as a "spurious mark," affixed to any goods, which is "likely to cause confusion, to cause mistake, or to deceive." 765 ILCS 1040/1 (West 2014). Moreover, in *People v. Ebelechukwu*, 403 Ill. App. 3d 62, 67 (2010), a case that was decided based on the current language of the Act, this court noted that the Act "provid[es] criminal penalties for trafficking in counterfeit goods to which a trademark is attached." This court stated that the Act was intended to "protect trademark holders from misappropriation of their investment and penalize those individuals who infringe on trademarks by trafficking in counterfeit goods." *Id.* Accordingly, the purpose of the Act is not only to penalize those individuals selling counterfeit items under the guise that the items are authentic, but also to penalize those who disclaim to the consumer, as was done in this case, that the item is "fake." In both scenarios, the offender is infringing on trademarks by trafficking counterfeit items bearing registered trademarks, and misappropriating the investment of the trademark holder.

¶ 30                               Constitutionality of Statute

¶ 31    Defendant alternatively argues that section 2 of the Act is unconstitutional because it fails to require a culpable mental state beyond mere knowledge. "A statute is presumed constitutional, and the party challenging the statute bears the burden of demonstrating its invalidity." *People v. Malchow*, 193 Ill. 2d 413, 418 (2000). "Whether a statute is constitutional is a question of law that we review *de novo*." *Id.*

¶ 32    The fourteenth amendment to the United States Constitution and article I, section 2, of the Illinois Constitution protect individuals from the deprivation of life, liberty, or property without due process of law. U.S. Const., amend. XIV; Ill. Const. 1970, art. I, § 2. "Under the banner of its police power, the legislature has wide discretion to fashion penalties for criminal offenses, but this discretion is limited by the constitutional guarantee of substantive due process, which provides that a person may not be deprived of liberty without due process of law." *People v. Madrigal*, 241 Ill. 2d 463, 466 (2011). When the challenged statute does not affect a fundamental constitutional right, the appropriate test for determining its constitutionality is the highly deferential rational basis test. *Id.* Under that test, a statute will be sustained if it bears a reasonable relationship to a public interest to be served, and the means adopted are a reasonable method of accomplishing the desired objective. *Id.*

¶ 33    A statute violates due process if it potentially subjects "wholly innocent conduct to criminal penalty without requiring a culpable mental state beyond mere knowledge." *Id.* at 467. In such a case, the statute "fails the rational basis test because it does not represent a reasonable method of preventing the targeted conduct." *Id.* at 468. Here, defendant, relying on *Madrigal*, contends that because section 2 of the Act merely requires that the offender "knowingly" sell or intend to sell counterfeit items, the statute violates due process. We disagree.

¶ 34    In *Madrigal*, the statute at issue involved identity theft and stated that a person commits the offense of identity theft when he or she knowingly:

"(1) uses any personal identifying information or personal identification document of another person to fraudulently obtain credit, money, goods, services, or other property, or

(2) uses any personal identification information or personal identification document of another with intent to commit any felony theft or other felony violation of State law not set forth in paragraph (1) of this subsection (a), or

(3) obtains, records, possesses, sells, transfers, purchases, or manufactures any personal identification information or personal identification document of another with intent to commit or to aid or abet another in committing any felony theft or other felony violation of State law, or

(4) uses, obtains, records, possesses, *sells*, transfers, purchases, or manufactures any personal identification information or personal identification document of another *knowing that such personal identification information or personal identification documents were stolen or produced without lawful authority*, or

* * *

(7) uses any personal identification information or personal identification document of another for the purpose of gaining access to any record of the actions taken, communications made or received, or other activities or transactions of that person, without the prior express permission of that person." (Emphases added.) 720 ILCS 5/16G-15(a) (West 2008).

¶ 35    The Illinois Supreme Court found in *Madrigal* that the first five offenses listed in subparagraphs (a)(1) through (a)(5) "require a criminal purpose in addition to the general knowledge that one is committing the actions specified," and "clearly do not fall within the parameters of the line of cases that deal with statutes that potentially punish innocent conduct." *Madrigal*, 241 Ill. 2d at 470. The court went on to find that (a)(7), on the other hand, clearly did "not require criminal intent, criminal knowledge, or a criminal purpose" because it potentially punished wholly innocent conduct like doing a computer search through Google or a social networking site that could uncover records or transactions of a person. *Id.* at 470-71.

¶ 36    Conversely, the statute at issue in our case does not have the potential to punish wholly innocent conduct. And is, in fact, precisely akin to section (a)(4) of the above statute, which our supreme court expressly found properly required a criminal purpose. Section (a)(4) of the statute at issue in *Madrigal* states, in pertinent part, that a person is guilty of identity theft if he or she sells any personal identification documents of another, "*knowing* that such personal identification information or personal identification documents were *stolen or produced without lawful authority*." (Emphases added.) 720 ILCS 5/16G-15(a)(4) (West 2008). The same requirements are present here. Section 2 of the Act requires, in pertinent part, that whoever uses a counterfeit mark of which he or she is not the rightful owner, or in any way "knowingly" sells any goods to which any such *counterfeit mark* is attached or affixed, shall be guilty of a Class A misdemeanor. Accordingly, just as selling personal identification documents that are known to be stolen constitutes a criminal purpose, so too does selling items that are known to be counterfeit. We therefore find that this statute does not violate due process.

¶ 37    Defendant nevertheless contends that section 2 has the potential to punish wholly innocent conduct like that which occurred in *Revlon*—when a company uses another company's

- 8 -

trademark for comparison purposes on its box. However, as discussed above, the statute under which Revlon was charged stated, "Every person who shall use or display a trade-mark of which he is not the lawful owner in any manner not authorized by such owner shall be deemed guilty of a misdemeanor ***." Ill. Rev. Stat. 1963, ch. 140, ¶ 25. As explained in detail above, the lack of the word "counterfeit" from this statute, potentially criminalized innocent behavior such as this one—where a company used another company's trademark for comparison purposes. The definition of a counterfeit mark includes the requirements that (1) it be applied to any goods; (2) it is identical with, or substantially indistinguishable from, a mark registered in this state, any state, or on the principal register in the United States Patent and Trademark Office and in use; and (3) the application of which is (i) likely to cause confusion, to cause mistake, or to deceive, or (ii) otherwise intended to be used on or in connection with the goods or services for which the mark is registered. 765 ILCS 1040/1 (West 2014). The very essence of a counterfeit item is that it is created with the intent to cause confusion between it and an authentic item. As a result, we find that if a person knows an item is a counterfeit item, and sells or intends to sell that item, that person has committed a crime under section 2 of the Act.

¶ 38    Similarly, we reject defendant's argument that section 2 would potentially criminalize the wholly innocent conduct of selling a handbag marked "not made by Michael Kors" or if the product uses the trademark for parody purposes. If a product stated that it was "not made by Michael Kors," it would not be a counterfeit item because the definition of a counterfeit item is one that bears a registered trademark that is identical with, or substantially indistinguishable with, a registered trademark and which *is likely to cause confusion, to cause mistake, or to deceive*. A handbag that states, "not made by Michael Kors" would not be confused or mistaken with an authentic Michael Kors handbag.

¶ 39    Defendant's final contention is that the use of the word "or" in part three of the definition of a counterfeit mark potentially criminalizes wholly innocent conduct. The third requirement for a spurious mark to be deemed a counterfeit mark is that the application of such mark "either (i) is likely to cause confusion, to cause mistake, or to deceive; or (ii) otherwise intended to be used on or in connection with the goods or services for which the mark is registered." *Id.* Defendant claims that the use of "or" in the definition signifies that under subset (ii) of the third element of the definition of counterfeit mark, a person could be punished for selling a handbag that states, "not made by Michael Kors," as that would be applying a registered trademark on goods for which the trademark was intended, despite the fact that such use would not likely cause confusion or mistake.

¶ 40    As recognized by both parties, the federal counterpart to the Act states that the term "counterfeit mark" means a spurious mark:

> "(i) that is used in connection with trafficking any goods, services, labels, patches, stickers, wrappers, badges, emblems, medallions, charms, boxes, containers, cans, cases, hangtags, documentation, or packaging of any type or nature;
>
> (ii) that is identical with, or substantially indistinguishable from, a mark registered on the principal register in the United States Patent and Trademark Office and in use, whether or not the defendant knew such mark was so registered;
>
> (iii) that is applied to or used in connection with the goods or services for which the mark is registered with the United States Patent and Trademark Office, or is applied to or consists of a label, patch, sticker, wrapper, badge, emblem, medallion, charm, box, container, can, case, hangtag, documentation, or packaging of any type or nature that is

designed, marketed, or otherwise intended to be used on or in connection with the goods or services for which the mark is registered in the United States Patent and Trademark Office; *and*

(iv) the use of which is likely to cause confusion, to cause mistake, or to deceive[.]" (Emphasis added.) 18 U.S.C. § 2320(f)(1)(A) (2012).

¶ 41 Accordingly, the federal counterpart to the statute at issue defines a counterfeit mark as one requiring *both* the likelihood of confusion, mistake, or deceit, as well as the use on or in connection with the goods or services for which the mark is registered. This is different from the definition in Illinois, which requires either the likelihood of confusion *or* the use on or in connection with the goods or services for which the mark is registered. While we find this discrepancy problematic, this issue is not properly before this court.

¶ 42 "[C]ourts do not rule on the constitutionality of a statute where its provisions do not affect the parties [citation], and decide constitutional questions only to the extent required by the issues in the case." *People v. Mosley*, 2015 IL 115872, ¶ 11. Defendant was charged in this case under section 2 of the Act, in that he knowingly sold items bearing counterfeit marks. The State presented evidence that certain handbags defendant was selling were counterfeit in that they bore identical marks to that of trademarks registered to Michael Kors and Tory Burch. The State, in closing argument, specifically argued that "the deception is the bag itself." In its briefs to the trial court after presenting evidence, it stated that the definition of a counterfeit mark included the element that "the application or use of the mark is likely to cause confusion or mistake or to deceive." The trial court noted in its decision that the deception was to the public, since the handbag bore a registered trademark. There was no discussion whatsoever of subset (ii) of the third element of the definition of counterfeit mark, and therefore the constitutionality of that subset is not before this court as it would not affect the parties. See *id.*

¶ 43 CONCLUSION

¶ 44 For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 45 Affirmed.