# ILLINOIS OFFICIAL REPORTS

## Supreme Court

***People v. Hollins*, 2012 IL 112754**

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. MARSHALL C. HOLLINS, Appellant. |
| | |
| Docket No. | 112754 |
| Filed | June 21, 2012 |
| | |
| Held<br><br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The fact that the legal age for consent to be photographed engaging in sexual acts is 18, while the legal age for consent to engage in them is 17, does not deny due process or equal protection—child pornography convictions upheld and as-applied challenge to statutory constitutionality rejected. |
| | |
| Decision Under Review | Appeal from the Appellate Court for the Second District; heard in that court on appeal from the Circuit Court of Stephenson County, the Hon. Michael P. Bald, Judge, presiding. |
| | |
| Judgment | Affirmed. |

| Counsel on Appeal | Michael J. Pelletier, State Appellate Defender, Thomas A. Lilien, Deputy Defender, and Kathleen J. Hamill, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Elgin, for appellant. |
|---|---|
| | Lisa Madigan, Attorney General, of Springfield, and John H. Vogt, State's Attorney, of Freeport (Michael A. Scodro, Solicitor General, and Michael M. Glick and Joshua M. Schneider, Assistant Attorneys General, of Chicago, of counsel), for the People. |
| Justices | JUSTICE GARMAN delivered the judgment of the court, with opinion. |
| | Chief Justice Kilbride and Justices Thomas, Karmeier, and Theis concurred in the judgment and opinion. |
| | Justice Burke dissented, with opinion, joined by Justice Freeman. |

**OPINION**

¶ 1 Defendant, Marshall C. Hollins, was convicted following a stipulated bench trial of three counts of child pornography pursuant to section 11-20.1(a)(1)(i), (a)(1)(ii) and (a)(4) of the Criminal Code of 1961 (720 ILCS 5/11-20.1(a)(1)(i), (a)(1)(ii), (a)(4) (West 2008)), and was sentenced to eight years in the Illinois Department of Corrections. Defendant appealed, challenging the constitutionality of the child pornography statute as applied to him. The appellate court affirmed. No. 2-10-0051 (unpublished order under Supreme Court Rule 23). For the following reasons, we affirm.

¶ 2 BACKGROUND

¶ 3 On March 19, 2009, defendant was charged by information in the circuit court of Stephenson County with three counts of child pornography: (1) between January 1, 2008, and December 1, 2008, defendant knowingly photographed A.V., a child whom defendant knew to be under the age of 18 years, while actually engaged in an act of sexual penetration with defendant, in violation of section 11-20.1(a)(1)(i); (2) between January 1, 2008, and December 1, 2008, defendant knowingly photographed A.V., a child whom defendant knew to be under the age of 18 years, while actually engaged in an act of sexual penetration involving the sex organs of the child, in violation of section 11-20.1(a)(1)(ii); and (3) between January 1, 2008, and December 1, 2008, defendant knowingly used A.V., a child whom defendant knew to be under the age of 18 years, to appear in a photograph in which A.V. would be depicted as actually engaging in an act of sexual penetration with defendant, in violation of section 11-20.1(a)(4).

¶ 4		A motion to suppress statements made by defendant was denied by the circuit court following a hearing on June 16, 2009. In addition, defendant filed a motion to find portions of the child pornography statute unconstitutional. A "second amended motion to declare portions of statute unconstitutional" was filed on July 16, 2009. In the motion defendant admitted that, at the time of the offenses, he was 32 years old and A.V. was 17. Defendant argued that the penalty for this particular offense was too severe and that it is harsher than the penalty for a similar offense that contains identical elements. He also argued that because portions of the statute criminalize and punish legal activity, those portions are in violation of the proportionate penalties clause and therefore unconstitutional. A hearing was held on the motion on July 21, 2009, at which the trial court denied the motion.

¶ 5		On August 24, 2009, defendant waived his right to a jury trial and elected to proceed with a bench trial. On September 22, 2009, a stipulated bench trial was held. The first stipulation was from Detective Sergeant Jim Drehoble of the Freeport police department, who would testify that he investigated a complaint made by A.V.'s mother involving A.V. and defendant. She reported to police that her daughter had been having sex with defendant, a 32-year-old registered sex offender. She showed Drehoble four or five pictures depicting sexual penetration that had been sent to A.V.'s e-mail from an e-mail address she knew belonged to defendant. The mother was able to identify A.V. in the pictures because A.V.'s pubic area was shaved. When the interview was completed, Drehoble had the mother e-mail a copy of the photos to his department e-mail.

¶ 6		On January 20, 2009, Drehoble and another detective went to defendant's home and later interviewed him at the Freeport police department. Defendant advised his date of birth was September 13, 1976, and acknowledged he knew A.V. was 17 years old when they had sex. He also knew her birth date. The interview was recorded and attached to the stipulation as part of the record. Also entered as exhibits attached to the stipulation were pictures of defendant and A.V. having sex. Defendant admitted to taking the pictures of himself having sex with A.V. with his cell phone. He acknowledged that he knew A.V. was under age 18 when he had sex with her and took the pictures. Defendant acknowledged that they were in Freeport, Stephenson County, Illinois, when he took pictures of himself and A.V. having sex.

¶ 7		The second stipulation stated that A.V. would testify her birth date is February 8, 1991. She lived with her mother in Freeport. She turned 17 on February 8, 2008, and 18 on February 8, 2009. She met defendant at her home in January 2008 when she was 16. At that time they only talked with each other. She later saw defendant again at Highland College, where they were in some of the same classes together. She and defendant became reacquainted and became friends. She was 17 years old when she went to Highland and had a consensual sexual relationship with defendant. She would testify that during one of the times she had sex with defendant he took a photo or photos of them during the act of sexual intercourse. She, along with her mother, reported this relationship to Drehoble on December 1, 2008. On that date, A.V. was still 17 years old. There was no further sexual relationship between herself and defendant after December 1, 2008. She would identify defendant in court as the person with whom she had a sexual relationship and who had taken the picture or pictures of her during an act of sexual intercourse as defendant had placed his penis inside her vagina.

¶ 8    The third stipulation was that A.V.'s mother would testify that she gave birth to A.V. on February 8, 1991, and her daughter went to Highland College in Freeport. The mother had known defendant, as he was at one time a foster child in her mother's (A.V.'s grandmother's) household. She brought the pictures to Drehoble after retrieving them from her daughter's e-mail. She noticed the pictures had been sent from an e-mail address she recognized as defendant's. She knew the pictures were of A.V.'s vaginal area because her daughter's pubic area was shaved. After she discussed the matter with Drehoble, the police determined there was no crime for sexual assault or abuse offenses due to the age of her daughter. On January 20, 2009, she again made a complaint to Drehoble in relation to the pictures taken and e-mailed copies of the photos to Drehoble upon his request.

¶ 9    The trial court found defendant guilty of three counts of child pornography and sentenced him to concurrent terms of eight years' imprisonment for each count. Defendant appealed, arguing that the child pornography statute is unconstitutional as applied to him and that his convictions violated the one-act, one-crime doctrine. The appellate court rejected both of defendant's arguments and affirmed his convictions.

¶ 10    ANALYSIS

¶ 11    On appeal to this court defendant raises two main arguments: (1) the child pornography statute, as applied in this case, denies defendant due process of law under the United States and Illinois constitutions; and (2) the child pornography statute as applied violates the equal protection clauses of the United States and Illinois constitutions. Because we find that there is a rational basis for the child pornography statute under both due process and equal protection analyses, we affirm the judgments of the appellate and circuit courts.

¶ 12    At the time defendant was charged and convicted of his offense, the child pornography statute defined "child" as follows:

" 'Child' includes a film, videotape, photograph, or other similar visual medium or reproduction or depiction by computer that is, or appears to be, that of a person, either in part, or in total, under the age of 18, regardless of the method by which the film, videotape, photograph, or other similar visual medium or reproduction or depiction by computer is created, adopted, or modified to appear as such. 'Child' also includes a film, videotape, photograph, or other similar visual medium or reproduction or depiction by computer that is advertised, promoted, presented, described, or distributed in such a manner that conveys the impression that the film, videotape, photograph, or other similar visual medium or reproduction or depiction by computer is of a person under the age of 18." 720 ILCS 5/1y1-20.1(f)(7) (West 2008).[1]

_____

[1]The text of the statute was changed effective July 1, 2011, as follows: "For the purposes of this Section, 'child pornography' includes a film, videotape, photograph, or other similar visual medium or reproduction or depiction by computer that is, or appears to be, that of a person, either in part, or in total, under the age of 18 and at least 13 years of age or a severely or profoundly mentally retarded person, regardless of the method by which the

-4-

¶ 13    Defendant argues the statute is unconstitutional under the due process and equal protection clauses of both the United States and Illinois constitutions. U.S. Const., amend. XIV; Ill. Const. 1970, art. I, § 2. Statutes are presumed constitutional. *People v. Donoho*, 204 Ill. 2d 159, 177 (2003). The party challenging the constitutionality of a statute carries the burden of proving that the statute is unconstitutional. *Donoho*, 204 Ill. 2d at 177. We have a duty to construe the statute in a manner that upholds the statute's validity and constitutionality, if it can be reasonably done. *People v. Graves*, 207 Ill. 2d 478, 482 (2003). The constitutionality of a statute is a question of law that we review *de novo*. *Graves*, 207 Ill. 2d at 482.

¶ 14                                A. Due Process

¶ 15    Defendant contends that this statute, as applied, violates the due process clause of both the United States and Illinois constitutions. Defendant concedes that, as this case does not implicate a fundamental right, the test for determining whether the statute complies with substantive due process is the rational basis test. *People v. Dabbs*, 239 Ill. 2d 277, 292 (2010). A statute will be upheld under the rational basis test so long as it bears a rational relationship to a legitimate legislative purpose and is neither arbitrary nor unreasonable. *Dabbs*, 239 Ill. 2d at 292.

¶ 16    In support of his due process argument, defendant raises three main contentions: (1) application of the statute to defendant does not bear a reasonable relationship to the public interest to be protected because it denies consenting adults the right to engage in private sexual activities of their choice; (2) the statute violates the Illinois Constitution's privacy clause, which provides greater privacy protections than does the United States Constitution; and (3) when viewed in the context of the Illinois sex offense statutes, the statute failed to give defendant fair notice his conduct was criminal. Defendant also points to the legislative history concerning the raising of the age of consent for pornography from 16 to 18 years old in 1985, arguing the reasons behind it were to aid in the prosecution of child pornography cases.

¶ 17    Defendant first argues that the application of the child pornography statute to persons old enough to legally consent to the private sexual activity they have chosen to photograph does nothing to accomplish the legislative purpose of protecting children from sexual exploitation and abuse. Defendant claims that here, no child was being exploited or abused. Rather, the "child" in question was a 17-year-old who, under Illinois law, could legally consent to sex and

---

film, videotape, photograph, or other similar visual medium or reproduction or depiction by computer is created, adopted, or modified to appear as such. 'Child pornography' also includes a film, videotape, photograph, or other similar visual medium or reproduction or depiction by computer that is advertised, promoted, presented, described, or distributed in such a manner that conveys the impression that the film, videotape, photograph, or other similar visual medium or reproduction or depiction by computer is of a person under the age of 18 and at least 13 years of age or a severely or profoundly mentally retarded person." 720 ILCS 5/11-20.1(f)(7) (West 2010).

who was involved in a legal, consensual sexual relationship with her boyfriend. 720 ILCS 5/12-16(d) (West 2008).

¶ 18    In applying the rational basis test, the court must first ascertain the statute's public purpose in order to test whether its provisions reasonably implement that purpose. *People v. Marin*, 342 Ill. App. 3d 716, 722-23 (2003). The purpose of the child pornography statute is to prevent the sexual abuse and exploitation of children. *People v. Geever*, 122 Ill. 2d 313, 326 (1988). This court, citing the United States Supreme Court's decision in *New York v. Ferber*, 458 U.S. 747, 756-59 (1982), has noted that child pornography is intrinsically related to child sexual abuse and states have a compelling interest in safeguarding the physical and psychological health of children. *People v. Alexander*, 204 Ill. 2d 472, 477 (2003). "[C]hild pornography is an offense against the child and causes harm 'to the physiological, emotional, and mental health' of the child." *People v. Lamborn*, 185 Ill. 2d 585, 588 (1999) (quoting *Ferber*, 458 U.S. at 758). "Child pornography is particularly harmful because the child's actions are reduced to a recording which could haunt the child in future years, especially in light of the mass distribution system for child pornography." *Lamborn*, 185 Ill. 2d at 589 (citing *Ferber*, 458 U.S. at 759). The United States Supreme Court has also found that child pornography impacts a child's reputational interest and emotional well-being. *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 249 (2002).

¶ 19    Thus, the State contends that the statute, as applied, is rationally related to the state's legitimate interest in protecting the psychological welfare of children. Defendant counters that this interest is frustrated when the victim depicted in the photograph is a 17-year-old involved in a legal, consensual relationship. An identical argument was taken up by the Nebraska Supreme Court in *State v. Senters*, 699 N.W.2d 810 (Neb. 2005).

¶ 20    In *Senters*, the defendant was charged with making child pornography for videotaping himself having sex with his 17-year-old girlfriend. In Nebraska, while it was legal in most situations for someone over the age of 16 to consent to sex, it was still "unlawful for 'a person to knowingly make, publish, direct, create, provide, or in any manner generate any visual depiction of sexually explicit conduct' " with a person under the age of 18 as one of its participants or portrayed observers. *Senters*, 699 N.W.2d at 813 (quoting Neb. Rev. Stat. § 28-1463.02(1) (Reissue 1995)). "Thus, while the 17-year-old student could legally consent to having sexual relations with Senters, videotaping the act was illegal." *Senters*, 699 N.W.2d at 813-14.

¶ 21    On appeal to the Nebraska Supreme Court, the defendant challenged the statute both on its face and as applied to himself as violative of both the United States and Nebraska constitutions' due process clauses. *Senters*, 699 N.W.2d at 814. The court rejected the defendant's argument that the United States Supreme Court decision in *Lawrence v. Texas*, 539 U.S. 558 (2003), gave him a fundamental right to sexual privacy, and applied the rational basis test. *Senters*, 699 N.W.2d at 817. The court found that "[t]he State undoubtedly has a legitimate reason to ban the creation of child pornography," as it "is often associated with child abuse and exploitation, resulting in physical and psychological harm to the child." *Senters*, 699 N.W.2d at 817. The court was not persuaded by the defendant's argument that the law, at least as it applied to him, was not rationally related to the state's legitimate interest because it also prohibited a person from videotaping lawful sexual conduct for private,

noncommercial purposes. The court found that even if the intimate act is intended "to remain secret, a danger exists that the recording may find its way into the public sphere, haunting the child participant for the rest of his or her life. It is reasonable to conclude that persons 16 and 17 years old, although old enough to consent to sexual relations, may not fully appreciate that today's recording of a private, intimate moment may be the Internet's biggest hit next week." *Senters*, 699 N.W.2d at 817.

¶ 22    The court further rejected the defendant's argument that, if the legislature were concerned about reputational harm, it should punish distribution rather than production of the videotape. The court held that "[i]f sexually explicit conduct is not recorded, it cannot be distributed," and thus it was reasonable to find that "criminalizing the making of recordings depicting persons under 18 years of age engaged in sexually explicit conduct furthers the goal of protecting those persons from the reputational harm that would occur if the recordings were distributed." *Senters*, 699 N.W.2d at 818.

¶ 23    A federal court addressing this issue reached a similar conclusion. In *United States v. Bach*, 400 F.3d 622 (8th Cir. 2005), cited by the *Senters* court, the defendant was charged with possessing visual depictions which had been produced by using a minor engaged in sexually explicit conduct, transmitting such visual depictions, and using a minor to produce visual depictions of the minor engaged in sexually explicit conduct. *Bach*, 400 F.3d at 628. The defendant, on appeal, argued that, even though a person under 18 constituted a minor for the purposes of the federal child pornography statutes, the images were protected by the liberty and privacy components of the due process clause of the fifth amendment because the photos portrayed noncriminal sexual conduct, as the minor was 16 and the age of consent under Minnesota (the state where the offenses took place) and federal law was 16. The *Bach* court rejected the defendant's *Lawrence*-based argument, finding *Lawrence* not applicable to the defendant's situation. The court noted that Congress changed the definition of a minor in the child pornography laws in 1984 to apply to anyone under 18 because it found that the previous ceiling of 16 had hampered enforcement of child pornography laws since, with the 16-year-old ceiling, there was sometimes confusion about whether a subject was a minor since children enter puberty at different ages. *Bach*, 400 F.3d at 629. The court concluded that the congressional choice to regulate child pornography by defining "minor" as an individual under 18 was rationally related to the government's legitimate interest in enforcing child pornography laws. *Bach*, 400 F.3d at 629.

¶ 24    We find the reasoning employed by the Nebraska Supreme Court in *Senters* and the United States Court of Appeals for the Eighth Circuit in *Bach* persuasive. Under the rational basis analysis, a statute will be upheld so long as it bears a rational relationship to a legitimate legislative purpose, and it is neither arbitrary nor unreasonable. *Dabbs*, 239 Ill. 2d at 292. Here, as discussed above, the legitimate government purpose is protecting children from sexual abuse and exploitation, and the prohibition of photographing or videotaping minors engaged in sexual activity bears a rational relationship to protecting them from such abuse. Raising the age to 18, even though the age of consent for sexual activity is 17, is a reasonable means of accomplishing this legitimate government purpose as it aids the State in enforcing child pornography laws. See *Bach*, 400 F.3d at 629; *Dabbs*, 239 Ill. 2d at 293-94.

¶ 25    Further, as argued by the State, there are rational, reasonable arguments in support of

having a higher age threshold for appearance in pornography than for consent to sexual activity. The consequences of sexual activity are concrete, and for the most part, readily apparent to teenagers: possible pregnancy, sexually transmitted diseases, and emotional issues. Many, if not most, teenagers who are 16 and 17 will have been apprised of these consequences by parents or sexual education classes in school. The dangers of appearing in pornographic photographs or videos are not as readily apparent and can be much more subtle. Memorialization of the sexual act makes permanent an intimate encounter that can then be distributed to third parties. These concerns are exacerbated in the modern digital age, where once a picture or video is uploaded to the Internet, it can never be completely erased or eradicated. It will always be out there, hanging over the head of the person depicted performing the sexual act. Defendant argues that these photographs were meant to be kept private between himself and A.V. and were never intended for distribution to any third party; thus there was no danger of impugning A.V.'s reputational interest. However, despite the best intentions of the parties involved in such a situation, there is no guarantee private photographic images will always remain private. For a variety of reasons, once-private material can someday be made public, whether by accident, theft, or the actions of a scorned former partner. Setting the age of consent at 18 for appearance in pornographic materials is a reasonable, rational approach to protecting children from sexual exploitation or abuse.

¶ 26 　In his reply brief, defendant cites to our recent decision in *People v. Madrigal*, 241 Ill. 2d 463 (2011), in support of his argument that the statute unconstitutionally punishes innocent behavior. The situation in the present case is distinguishable from that which confronted this court in *Madrigal*, where we considered the constitutionality of section 16G-5(a)(7) of the identity theft statute (720 ILCS 5/16G-15(a)(7) (West 2008)). In *Madrigal*, we found the subsection at issue unconstitutional under the rational relationship test because it violated due process. The purpose of the statute was to protect the economy and people of Illinois from the ill-effects of identity theft. *Madrigal*, 241 Ill. 2d at 467. This court noted that it has repeatedly held that a statute violates substantive due process of both the United States and Illinois constitutions when a statute subjects wholly innocent conduct to criminal penalty without requiring a culpable mental state beyond mere knowledge. *Madrigal*, 241 Ill. 2d at 467. Such a method is not a reasonable means of preventing the targeted conduct. *Madrigal*, 241 Ill. 2d at 468.

¶ 27 　The subsection at issue in *Madrigal* did not require criminal intent, criminal knowledge, or a criminal purpose in order to subject a person to a felony conviction and punishment. *Madrigal*, 241 Ill. 2d at 470-71. Rather, the subsection "require[d] only that a person knowingly use any 'personal identification information or personal identification document of another for the purpose of gaining access to any record of the actions taken, communications made or received, or other activities or transactions of that person, without the prior express permission of that person.' " *Madrigal*, 241 Ill. 2d at 471 (quoting 720 ILCS 5/16G-15(a)(7) (West 2008)). Personal identifying information ranged from readily accessible public information such as a person's name or address to confidential information like a social security or bank account number. The net result was that section 16G-15(a)(7) would potentially punish as a felony a wide array of wholly innocent conduct, such as doing a Google search by entering someone's name, which could uncover numerous records of actions

taken, communications made or received, or other activities or transactions of that person. *Madrigal*, 241 Ill. 2d at 471-72. Thus, because the subsection potentially punished a significant amount of wholly innocent conduct not related to the statute's purpose, the court found it was not a rational way of addressing the issue of identity theft. *Madrigal*, 241 Ill. 2d at 473.

¶ 28     Unlike the hypothetical situation discussed in *Madrigal*, the conduct at issue here is not "wholly innocent." In *Madrigal*, the term "innocent conduct" meant conduct not germane to the harm identified by the legislature, in that the conduct was wholly unrelated to the legislature's purpose in enacting the law. *Madrigal*, 241 Ill. 2d at 473. Here, while it is true that the underlying conduct being recorded is legal, it is the actual recording of that conduct, and the consequences to the child that flow therefrom, that is the interest being protected by the statute as applied. The legislature's purpose in enacting the statute was not necessarily to protect from the harm in the sexual act itself, but the memorialization of that act, for the reasons discussed above.

¶ 29     Defendant further claims that the Illinois Constitution provides him with more protection than the federal constitution in terms of sexual activity. *Senters* and *Bach* are distinguishable from the instant case, defendant argues, because unlike the Nebraska and federal constitutions, the Illinois Constitution contains an explicit constitutional provision that protects against invasions of privacy. *Senters*, 699 N.W.2d at 814 ("Although Senters also relies on the Nebraska Constitution, we note that our constitution does not contain a right of privacy broader than that recognized by the federal Constitution."). Defendant argues that the "zone of privacy" afforded by the privacy clause protects his right to record his legal, consensual sexual encounter with A.V. Defendant argues the privacy clause is violated by preventing people who are legally able to consent to engage in sexual activities from photographing or recording said sexual activity.

¶ 30     The Illinois Constitution provides, in relevant part:

> "The people shall have the right to be secure in their persons, houses, papers and other possessions against unreasonable searches, seizures, *invasions of privacy* or interceptions of communications by eavesdropping devices or other means. No warrant shall issue without probable cause, supported by affidavit particularly describing the place to be searched and the persons or things to be seized." (Emphasis added.) Ill. Const. 1970, art. I, § 6.

¶ 31     "This court has observed that the Illinois Constitution goes beyond federal constitutional guarantees by expressly recognizing a zone of personal privacy, and that the protection of that privacy is stated broadly and without restrictions." *Kunkel v. Walton*, 179 Ill. 2d 519, 537 (1997). Even under the expanded privacy protections afforded by the Illinois Constitution, however, the constitutional right to privacy is not absolute, as only unreasonable invasions of privacy are constitutionally forbidden. *People v. Cornelius*, 213 Ill. 2d 178, 193 (2004). *Cornelius* was the first case to address a privacy claim based on article I, section 6, in the context of a criminal prosecution. *People v. Caballes*, 221 Ill. 2d 282, 326 (2006).

¶ 32     Defendant's claim is not cognizable under the Illinois Constitution's privacy clause. In the two instances that we have analyzed a privacy clause claim with regard to a criminal

prosecution, both cases involved the government or its agents actively intruding into the privacy of a defendant. In *Cornelius* it was the State's dissemination of a convicted sex offender's photograph and physical attributes on the Internet for the Illinois sex offender registry. *Cornelius*, 213 Ill. 2d at 192. In *Caballes*, we considered whether the privacy clause should be interpreted by this court to require the existence of "specific and articulable facts" before a canine sniff could be conducted during a routine traffic stop. *Caballes*, 221 Ill. 2d at 319. Here, defendant does not make any argument or claim that government agents or action invaded his privacy. Rather, he claims the existence of the law itself criminalizing the recording of a consensual, legal sexual encounter violates the privacy clause. The act itself is not at issue. The issue is the recording of that act. The legislature has determined that those who are under the age of 18 may not legally consent to be recorded or photographed in pornographic material, and has made it illegal to record such material in order to protect those who are under 18 from sexual abuse and exploitation. The mere fact that the illegal recording of the sexual act in question took place in private, rather than in public, does not implicate the privacy clause.

¶ 33    Defendant next argues that the statute violates his due process rights because it did not provide him with fair notice that he was committing a crime when he photographed himself having sex with A.V. Defendant argues that the fair-warning requirement embodied in the due process clause prohibits states from holding an individual criminally responsible for conduct which he could not reasonably understand to be proscribed. In support of his argument, defendant contends that the "illogical inconsistency" between the child pornography statute's inclusion of 17-year-olds as victims and the lack of statutes proscribing sexual activity with dating partners who are 17 creates a "legislative trap" for persons whose consenting sex partners are 17 years old. As proof, defendant points to the transcript of his statements to the police, which reveal that he knew it was legal to have sex with A.V., but was completely unaware that it was not legal for him to take sexually explicit pictures of her while doing so.

¶ 34    As noted by defendant in his brief, ignorance of the law is no defense. Simply because defendant did not know it was illegal to photograph his 17-year-old sex partner in the commission of the act does not provide him relief under the law, constitutional or otherwise. Further, under the particular facts of this case, defendant's arguments of ignorance are somewhat suspect. Defendant is a 32-year-old adult who is a convicted sex offender. As a convicted sex offender, defendant has prior experience with the legal system and sex offenses in particular.

¶ 35    Even putting aside arguments over ignorance of the law, there is no problem with fair notice in this case. In *Senters*, the defendant made a similar contention, arguing that the Nebraska statute violated his procedural due process rights because it did not provide sufficient notice as to who is a "child" under the act because within the Nebraska criminal code the definition of "child" has multiple meanings. The court rejected the defendant's argument, finding that because "the Legislature has expressly set out that participants in a visual depiction of sexually explicit conduct under the age of 18 are children," that was "enough notice to satisfy due process." *Senters*, 699 N.W.2d at 819.

¶ 36    We find the reasoning of the *Senters* court to be both persuasive and applicable in this case. The statute is clear that persons under age 18 may not be represented in visual depictions

of sexual activity. Defendant's only real argument here seems to be that, because he knew he could have sex with a 17-year-old, he did not know, and it is not fair, that it was illegal to record that sexual encounter with the same 17-year-old. As stated above, the statute is clear and definite, and ignorance of the statute is no defense. *People v. Izzo*, 195 Ill. 2d 109, 115 (2001) ("A principle deeply embedded in our system of jurisprudence is that one's ignorance of the law does not excuse unlawful conduct.").

¶ 37 Finally, defendant's argument concerning the legislative history and statements made during the debate on raising the age of consent to 18 years is unpersuasive. In its brief, the State argues that, among other reasons, the statute as applied survives rational basis because while a 17-year-old may legally consent to sexual activity, he or she may still be unable to appreciate the subtle dangers of memorializing such activity on film or in a photograph. Defendant argues that those concerns were not expressed by the legislature in 1985 when the age was raised to 18. Defendant points to Representative Regan's speech in the Illinois House justifying raising the age limit to 18 years because it would aid in enforcement of the child pornography statute. 84th Ill. Gen. Assem., House Proceedings, Oct. 30, 1985, at 15 (statements of Representative Regan). Defendant argues that this shows the legislature was not considering the argument advanced by the State in this case when it originally raised the age. However, under the rational basis test for substantive due process analysis of legislation, the law will be upheld if there is any conceivable basis for finding a rational relationship to a legitimate legislative purpose, even if that purpose did not motivate the legislative action. *People ex rel. Lumpkin v. Cassidy*, 184 Ill. 2d 117, 124 (1998). Thus, the court may consider arguments in support of finding a rational basis for the statute even if those arguments were not part of the original legislative discussion at the time of enactment. Even so, the desire to aid law enforcement in the prosecution of an offense has been found to be a reasonable, rationally related way to accomplish a legitimate government purpose. See *Dabbs*, 239 Ill. 2d at 293-94 (statute allowing the admission of other crimes or acts of domestic violence against a defendant in a domestic violence prosecution did not violate substantive due process, as it was rationally related to the state's legitimate concern with the effective prosecution of domestic violence offenses).

¶ 38                              B. Equal Protection

¶ 39 Defendant next argues that the application of the statute to him violates the equal protection clauses of the United States and Illinois constitutions. Defendant claims that he belongs to a class of people (such as the defendants in *Senters* and *Bach*) who engage in legal sexual activities with consensual partners and choose to photograph their private interactions, thereby violating child pornography statutes that define child so as to include such otherwise legal sex partners. Defendant was not in the same position as a person who photographs a child not old enough to engage in sexual activity, but rather defendant argues he was in the same position as anyone who photographs his or her legal, consenting sex partner. According to defendant, it is not reasonable or fair for the legislature to prohibit the sex partners of such people from photographing such otherwise lawful, private, sexual activity.

¶ 40 "The court applies the same equal protection analysis under both the United States and

-11-

Illinois Constitutions." *Donoho*, 204 Ill. 2d at 176. Equal protection challenges generally require the government to treat similarly situated people in a similar manner. *Donoho*, 204 Ill. 2d at 176-77. In evaluating challenges under equal protection, the court must first determine whether the statute implicates a fundamental right or whether it discriminates against a suspect class. *Donoho*, 204 Ill. 2d at 177. Defendant concedes that his equal protection claim is subject to a rational basis analysis, thereby implicitly acknowledging he is not a member of a suspect class and no fundamental right is at issue. *Donoho*, 204 Ill. 2d at 177 ("[w]here no suspect class or fundamental right is involved, the court evaluates the statute using the rational basis test"). Under the rational basis test, we will uphold the statute if it has a rational relationship to a legitimate purpose and is neither arbitrary nor discriminatory. *Donoho*, 204 Ill. 2d at 177.

¶ 41    Here, the *Senters* decision is again instructive. The defendant in *Senters* challenged the law under equal protection, arguing that he had a fundamental right to sexual privacy under the *Lawrence* case and claimed that the age classification used in the Nebraska law was overinclusive because it prohibited recording sex acts that were legal. *Senters*, 699 N.W.2d at 818. The *Senters* court disagreed and applied the rational basis test, concluding that the law survived rational basis review for the same reasons set out in the court's discussion of substantive due process. *Senters*, 699 N.W.2d at 818.

¶ 42    Similarly, for reasons discussed above in the due process section of this opinion, application of the statute to defendant does not violate equal protection. Defendant is not a member of a suspect class and no fundamental right is implicated. The statute's requirement that a person be 18 or older to engage in the memorialization of a sexual act has a rational relationship to the legitimate purpose of preventing the sexual abuse or exploitation of children. Further, the statute's age requirement is neither arbitrary nor discriminatory, for reasons also discussed in the previous section.

¶ 43                                CONCLUSION

¶ 44    For the foregoing reasons, we find no violation of either the United States or the Illinois constitution in the application of the child pornography statute to defendant. The judgments of the circuit and appellate courts are affirmed.

¶ 45    Affirmed.

¶ 46    JUSTICE BURKE, dissenting:

¶ 47    I write separately because the majority has overlooked *United States v. Stevens*, 559 U.S. ___, 130 S. Ct. 1577 (2010), an important decision from the United States Supreme Court that fundamentally affects the way the present case must be analyzed.

¶ 48                                     I

¶ 49    In the fall of 2008, the defendant, Marshall C. Hollins, age 32, and A.V., a 17-year-old female, were students at Highland Community College in Freeport, Illinois. The two began

a consensual sexual relationship. The age of consent in Illinois is generally 17 (see 720 ILCS 5/12-16(d) (West 2008)),[2] and there is no dispute that the sexual conduct that occurred between defendant and A.V. during their relationship was legal.

¶ 50    On one occasion while they were engaged in sexual intercourse, defendant used his cellphone camera to take five photographs of himself and A.V. All five photographs are extreme closeups of the couples' genitals. Neither defendant's nor A.V.'s face appears in any of the photographs and there are no visible identifying marks such as scars or tattoos.

¶ 51    At the request of A.V., defendant sent the photographs to A.V.'s e-mail account. Neither defendant nor A.V. had any intent to distribute the photographs to third parties and no attempt was made to do so. The photographs were discovered, however, when A.V.'s mother accessed A.V.'s e-mail account. A.V.'s mother contacted the Freeport police, who then spoke to defendant. Defendant admitted to the police that he had taken the photographs, admitted knowing that A.V. was 17 when they were taken, and admitted sending the photographs to A.V.

¶ 52    Defendant was charged in a three-count information with violating Illinois' child pornography statute, which prohibits, among other things, the photographing of sexual conduct involving "any child whom [the photographer] knows or reasonably should know to be under the age of 18." 720 ILCS 5/11-20.1(a)(1) (West 2008). Following a stipulated bench trial, defendant was convicted on all three counts and sentenced to concurrent terms of eight years' imprisonment on each count. The appellate court affirmed. No. 2-10-0051 (unpublished order under Supreme Court Rule 23).

¶ 53                                    II

¶ 54    While the age of consent in Illinois is generally 17, Illinois' child pornography statute sets the age at which a person may legally be photographed engaging in sexually explicit conduct at 18. Thus, while defendant did not violate any law when he had sexual intercourse with A.V., he did violate the law when he took a picture of the act.

¶ 55    Defendant challenges this statutory scheme on constitutional grounds. In essence, defendant alleges that the State violated his right to substantive due process when it applied the child pornography statute to him because the photographs that he took of himself and A.V. depict private, lawful conduct.

¶ 56    The majority addresses defendant's constitutional claim under rational basis review. The majority does so based on defendant's concession that no fundamental constitutional rights, including first amendment rights, are implicated by criminally prohibiting the photographs taken by defendant. See, *e.g.*, *In re D.W.*, 214 Ill. 2d 289, 310 (2005) ("Unless a fundamental constitutional right is implicated, the rational basis test applies, and the statute will be upheld so long as it bears a rational relationship to a legitimate state interest."). The proposition that the photographs are not entitled to first amendment protection stems, in turn, from the United

---

[2]This section was renumbered by Public Act 96-1551 (eff. July 1, 2011), and may now be found at 720 ILCS 5/11-1.60(d).

States Supreme Court's decision in *New York v. Ferber*, 458 U.S. 747 (1982).

¶ 57 In *Ferber*, the Court considered a first amendment challenge to a statute which prohibited persons from "knowingly promoting sexual performances by children under the age of 16 by distributing material which depicts such performances." *Id*. at 749. The defendant in the case had sold two films that showed young boys masturbating. *Id.* at 752.

¶ 58 The Court upheld the statute and, in so doing, recognized a "category of child pornography which *** is unprotected by the First Amendment." *Id*. at 764. The Court identified several policy justifications for excluding child pornography from first amendment protection: (1) it is a governmental objective of "surpassing importance" to prevent the "sexual exploitation and abuse of children" that occurs in the creation of the material (*id.* at 756-57); (2) the distribution of the material is "intrinsically related to the sexual abuse of children," both because the materials produced are a "permanent record" of the children's participation and the harm to the child is exacerbated by their circulation, and because prohibiting distribution of the material is the only effective way to stop "the production of material which requires the sexual exploitation of children" (*id.* at 759); (3) it is a crime "throughout the Nation" to employ children in the creation of pornography, and thus the advertising and selling of child pornography provide an "economic motive" for and are "an integral part of" that criminal activity (*id*. at 761-62); (4) "[t]he value of permitting live performances and photographic reproductions of children engaged in lewd sexual conduct is exceedingly modest, if not *de minimis*" (*id*. at 762). For these reasons, the Court concluded that "the evil to be restricted *** overwhelmingly outweighs the expressive interests, if any, at stake" and "it is permissible to consider these materials as without the protection of the First Amendment." *Id*. at 763-64. Subsequently, in *Osborne v. Ohio*, 495 U.S. 103 (1990), the Court relied on the rationales discussed in *Ferber* to extend the categorical exclusion for child pornography to include not only distribution but also possession of the material.

¶ 59 *Ferber* was read by courts, including this one, as having defined a broad category of unprotected expressive content—visual depictions of sexual conduct, "suitably" defined by statute, of children under "a specified age." *People v. Lamborn*, 185 Ill. 2d 585, 590 (1999) (citing *Ferber*, 458 U.S. at 764-65). This categorical exclusion was justified by the harms of child pornography discussed in *Ferber*, but it was widely assumed that those harms did not have to be present in an individual case for the material to be unprotected. That is, *Ferber* appeared to hold that the scope of the child pornography category was "not limited to materials whose production would generate the harms that the categorical exclusion was based on." John A. Humbach, *'Sexting' and the First Amendment*, 37 Hastings Const. L.Q. 433, 458 (2010). Rather, the category of constitutionally unprotected content was simply visual depictions of sexual conduct by children under a specified age.

¶ 60 This broad reading of *Ferber* was called into question by the Supreme Court's decision in *Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002). In that case, the Court struck down on first amendment grounds a federal law that criminalized sexually explicit images that appear to depict minors but that were produced without using any real children, *i.e.*, "virtual" child pornography. In reaching this result, the Court distinguished *Ferber* in language that seemed to suggest that the category of child pornography exempted from first amendment protection was "not merely justified but also shaped by reference to the particular harms that

-14-

motivated its creation." Humbach, *supra*, at 461.

¶ 61    The Court, stated, for example, that "*Ferber*'s judgment about child pornography was based upon how it was made, not on what it communicated" (*Free Speech Coalition*, 535 U.S. at 250-51), and that the "production of the work, not its content, was the target of the statute" (*id*. at 249). The Court distinguished "virtual" child pornography from unprotected child pornography by stating that, "[i]n the case of the material covered by *Ferber*, the creation of the speech is itself the crime of child abuse" whereas with virtual child pornography "there is no underlying crime at all." *Id*. at 254. The Court also observed that "[i]n contrast to the speech in *Ferber*, speech that itself is the record of sexual abuse, [virtual pornography] records no crime and creates no victims by its production." *Id*. at 250.

¶ 62    In short, *Free Speech Coalition* seemed "to view crime prevention as the core reason why the Court should deny constitutional protection to child-pornography materials." Humbach, *supra*, at 462; see also, *e.g.*, Sarah Wastler, *The Harm in "Sexting"?: Analyzing the Constitutionality of Child Pornography Statutes That Prohibit the Voluntary Production, Possession, and Dissemination of Sexually Explicit Images by Teenagers*, 33 Harv. J.L. & Gender 687, 697 (2010) ("*Free Speech Coalition* clarified that child pornography was limited to those images that are the 'record of sexual abuse' and that sexually explicit images of minors that are 'neither obscene nor the product of sexual abuse' retain the protection of the First Amendment.").

¶ 63    Nevertheless, the facts of *Free Speech Coalition* were limited to virtual images, not images of real people. Arguably, therefore, the broad categorical exclusion from first amendment protection of sexually explicit images of children under a specified age remained unchanged, even after *Free Speech Coalition.*

¶ 64    The broad categorical exclusion underlies the majority opinion here. Because the category of child pornography exempted from first amendment protection is presumed by the majority to include any sexually explicit pictures of persons under a specified age, it does not matter that A.V.'s sexual conduct with defendant was legal and consensual. Nor does it matter, as a general proposition, that there are significant differences between criminally, sexually abusing a 9- or 10-year-old child in order to create and distribute commercial child pornography, and taking private photographs of legal, consensual sexual activity. All that matters under this approach is that the person who was photographed engaged in sexual conduct is under a specified age, in this case 18. So long as this criteria is met, as it was in this case, then the photographs receive no first amendment protection and the state's decision to criminalize their creation is subject only to rational basis review.

¶ 65    But this analysis is no longer valid after *United States v. Stevens*, 559 U.S. ___, 130 S. Ct. 1577 (2010). In *Stevens*, the Court considered a first amendment challenge to a federal statute that criminalized the creation, sale, or possession of certain depictions of animal cruelty. The government, arguing in support of the statute, pointed to *Ferber* and argued that, as in that case, the Court should recognize a category of speech exempted from first amendment protection. The Court described the government's argument as "a free-floating" balancing test for first amendment coverage and rejected it as both "startling and dangerous." *Stevens*, 559 U.S. at ___, 130 S. Ct. at 1585. The Court then explained how *Ferber* should be understood:

"When we have identified categories of speech as fully outside the protection of the First Amendment, it has not been on the basis of a simple cost-benefit analysis. In *Ferber*, for example, we classified child pornography as such a category, 458 U.S., at 763. We noted that the State of New York had a compelling interest in protecting children from abuse, and that the value of using children in these works (as opposed to simulated conduct or adult actors) was *de minimis*. *Id.*, at 756-757, 762. But our decision did not rest on this 'balance of competing interests' alone. *Id.*, at 764. We made clear that *Ferber* presented a special case: The market for child pornography was 'intrinsically related' to the underlying abuse, and was therefore 'an integral part of the production of such materials, an activity illegal throughout the Nation.' *Id.*, at 759, 761. As we noted, ' "[i]t rarely has been suggested that the constitutional freedom for speech and press extends its immunity to speech or writing used as an integral part of conduct in violation of a valid criminal statute." ' *Id.*, at 761-762 (quoting *Giboney* [*v. Empire Storage & Ice Co.*, 336 U.S. 490, 498 (1949)]). *Ferber* thus grounded its analysis in a previously recognized, long-established category of unprotected speech, and our subsequent decisions have shared this understanding. See *Osborne v. Ohio*, 495 U.S. 103, 110 (1990) (describing *Ferber* as finding 'persuasive' the argument that the advertising and sale of child pornography was 'an integral part' of its unlawful production (internal quotation marks omitted)); *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 249-250 (2002) (noting that distribution and sale 'were intrinsically related to the sexual abuse of children,' giving the speech at issue 'a proximate link to the crime from which it came' (internal quotation marks omitted))." *Stevens*, 559 U.S. at ___, 130 S. Ct. at 1586.

After rejecting the government's reliance on *Ferber*, the Court went on to strike down the statute at issue on overbreadth grounds.

¶ 66    Following *Stevens* it is clear that there is no first amendment exception for child pornography, *per se*. Rather, child pornography is simply one example of an historical category of speech that is exempted from first amendment protection: speech that is an "integral part of conduct in violation of a valid criminal statute." Or, to put it another way, for a photograph to be child pornography in the federal constitutional sense, and thus be exempted from first amendment protection, the photograph must be "an integral part of conduct in violation of a valid criminal statute."

¶ 67    *Stevens* was one of "most doctrinally significant constitutional opinions of the Supreme Court's October 2009 Term" (Charles W. "Rocky" Rhodes, *The Historical Approach to Unprotected Speech and the Quantitative Analysis of Overbreadth in United States v. Stevens*, 559 U.S. ___, 130 S. Ct. 1577, 176 L. Ed. 2d 435 (2010), 2010 Emerging Issues 5227 (LexisNexis July 30, 2010)), and its effect on the constitutional definition of child pornography has been widely recognized:

"[W]hereas before *Stevens* many believed—perhaps erroneously—that any sexually explicit image of a minor was child pornography, this belief is now fatally flawed. Instead, in determining whether a particular nonobscene image constitutes child pornography, the initial question must be whether there is specific illegal conduct to which the speech is integral." Antonio Haynes, *The Age of Consent: When Is Sexting*

*No Longer "Speech Integral to Criminal Conduct"?*, 97 Cornell L. Rev. 369, 394-95 (2012).

"The *Stevens* Court reconciles *Ferber*, *Osborne*, and *Free Speech Coalition* to the conclusion that the creation of child pornography is a criminal act and the depiction thereof is the subject of a previously recognized and long-standing category of unprotected speech. Absent this connection between the image and the crime, First Amendment protection is presumed." Carmen Naso, *Sext Appeals: Re-assessing the Exclusion of Self-Created Images From First Amendment Protection*, 7 Crim. L. Brief 4, 11 (2011).

"[I]n *Stevens* the Supreme Court recast its *Ferber* decision as having been squarely grounded in the longstanding categorical First Amendment exclusion of expression that is 'an integral part of conduct in violation of a valid criminal statute.' In the *Ferber* case, the particular 'integral' relationship between the expressive material at issue—child pornography—and the underlying criminal conduct—sexual abuse of children—was the fact that the criminal conduct was carried out in order to generate the expressive material ***." Nadine Strossen, *A Big Year For the First Amendment: United States v. Stevens: Restricting Two Major Rationales for Content-Based Speech Restrictions*, 2009-10 Cato Sup. Ct. Rev. 67, 90.

"[*Stevens*] explained *Ferber* as a special case because the child pornography market is 'intrinsically related' to the underlying abuse. According to *Stevens*, *Ferber* did not affirm a new exception to the First Amendment, but was a special example of the historically unprotected category of speech integral to the commission of a crime." Harvard Law Review Association, *The Supreme Court 2009 Term, Leading Cases, I. Constitutional Law, D. Freedom of Speech and Expression*, 124 Harv. L. Rev. 239, 247 (2010).

"Any doubts as to the limits of Ferber and Osborne, pertaining to the policy justifications for child pornography prohibitions, were laid to rest by the recent Supreme Court decision in U.S. v. Stevens, where the Court made it clear that child pornography laws cannot be constitutionally applied in circumstances where no actual minor is sexually abused during the production of the material. Accordingly, child pornography can only be stripped of its constitutional protection if it records actual sexual abuse of child victims." Lawrence Walters, *Symposium, Sexually Explicit Speech, How to Fix the Sexting Problem: An Analysis of the Legal and Policy Considerations for Sexting Legislation*, 9 First Amend. L. Rev. 98, 113-14 (2010).

¶ 68    *Stevens*' importance to this case is clear. There was nothing unlawful about the production of the photographs taken by defendant in this case because the sexual conduct between defendant and A.V. was entirely legal. The photographs are therefore not child pornography as defined by the Supreme Court for purposes of the first amendment. And, because the photographs taken by defendant are not child pornography for purposes of the first

amendment, we cannot simply presume that rational basis review is appropriate in this case.[3]

¶ 69    *Stevens* was decided in April of 2010, well before defendant filed his appeal in this court. Nevertheless, despite the availability of *Stevens*, and despite its clear relevance, defendant's appellate counsel has not cited the case. To the contrary, as noted above, defendant's counsel has expressly conceded that the photographs at issue here are not entitled to first amendment protection and that the State's application of the child pornography statute in this case is subject only to rational basis review.

¶ 70    A court of review is not required to accept a concession by a party on an issue of law. See, *e.g.*, *United States v. Vega-Ortiz*, 425 F.3d 20, 22 (1st Cir. 2005); *Deen v. Darosa*, 414 F.3d 731, 734 (7th Cir. 2005). *Stevens* is binding authority on this court, and the decision goes to a core issue in this case—the level of scrutiny to apply to defendant's constitutional challenge. Moreover, because *Stevens* was decided after *State v. Senters*, 699 N.W.2d 810 (Neb. 2005), and *United States v. Bach*, 400 F.3d 622 (8th Cir. 2005), the two principal cases relied upon by the majority, it was not discussed in those cases. Further, this is a criminal case with a substantial liberty interest at stake. Given these circumstances, I would reject defense counsel's concession. I would order the parties to brief the effect of *Stevens*' holding—that child pornography, for purposes of the first amendment, exists only if it is "an integral part of conduct in violation of a valid criminal statute"—on our disposition of this case.

¶ 71    For the foregoing reasons, I respectfully dissent.


¶ 72    JUSTICE FREEMAN joins in this dissent.

---

[3]It is also inappropriate to analyze this case under substantive due process. See, *e.g.*, *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997) ("if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process").