# Illinois Official Reports

## Appellate Court

---

### *People v. Paranto*, 2020 IL App (3d) 160719

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MICHELLE A. PARANTO, Defendant-Appellant. |
| District & No. | Third District<br>No. 3-16-0719 |
| Filed | January 14, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Tazewell County, No. 15-CF-138; the Hon. Richard McCoy, Judge, presiding. |
| Judgment | Affirmed in part, vacated in part, and remanded. |
| Counsel on Appeal | James E. Chadd, Peter A. Carusona, and Amber Hopkins-Reed, of State Appellate Defender's Office, of Ottawa, for appellant.<br><br>Stewart J. Umholtz, State's Attorney, of Pekin (Patrick Delfino, Thomas D. Arado, and Stephanie L. Raymond, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE McDADE delivered the judgment of the court, with opinion.<br>Presiding Justice Lytton and Justice Wright concurred in the judgment and opinion. |

**OPINION**

¶ 1 Defendant, Michelle A. Paranto, appeals following her convictions on three counts of aggravated driving under the influence (DUI). She argues that the statutory section under which she was convicted is unconstitutional on its face. She also contends that the circuit court erred in denying her request to be screened for drug court, considering improper factors in aggravation at sentencing, and calculating her fines. We affirm in part, vacate in part, and remand for further proceedings.

¶ 2                                    I. BACKGROUND

¶ 3 On October 26, 2014, defendant was involved in a multicar accident that resulted in the death of Amy Hardin and significant injuries to Karla Paranto and Sunna Brown. The State filed a three-count indictment on April 16, 2015. Each of the counts alleged that defendant committed DUI in that she operated a motor vehicle "while there was any amount of drug, substance, or compound" in her body "resulting from the unlawful use or consumption of cannabis." See 625 ILCS 5/11-501(a)(6) (West 2014). Each count ultimately charged defendant with aggravated DUI; count I alleged that the car accident was the proximate cause of Hardin's death (*id.* § 11-501(d)(1)(F)), while counts II and III alleged that the accident was the proximate cause of great bodily harm suffered by Karla and Brown, respectively (*id.* § 11-501(d)(1)(C)).

¶ 4 Prior to trial, defendant filed a motion requesting an eligibility screening for drug court. The State objected, arguing that defendant was strictly ineligible for drug court because she was charged with a crime of violence. The State also argued that drug court would otherwise be inappropriate for defendant. Defendant disagreed with the assertion that she had been charged with a crime of violence. She also argued that an eligibility screening was mandatory under the statute governing drug court and that the circuit court was therefore without discretion to deny her request.

¶ 5 The court subsequently issued a written order denying defendant's request on two grounds. First, the court, citing *People v. Carron*, 298 Ill. App. 3d 676 (1998), found that aggravated DUI was a crime of violence, rendering defendant ineligible for drug court. Alternatively, the court found that it had discretion to deny the request and did so based on the seriousness of the charges against defendant.

¶ 6 The case proceeded to a stipulated bench trial on November 2, 2016. The stipulated evidence showed that defendant was driving with Karla as her passenger when, at a speed in excess of the posted limit, she proceeded through a red light at an intersection. Defendant's vehicle struck a vehicle driven by Hardin, and the two cars subsequently struck a number of stationary vehicles, including one occupied by Brown. A medical examination determined that Hardin died "from multiple blunt injuries due to a motor vehicle collision." Karla's injuries included a ruptured spleen, broken ribs, shattered bones in her leg, loose teeth, and head trauma—injuries that continued to limit her mobility. Brown's injuries included trauma to her head, neck, shoulder, and hip, including ongoing tendinosis and nerve damage. Defendant agreed to submit to a blood and urine test, which resulted in a positive finding of 8.3 nanograms per milliliter of Delta-9 tetrahydrocannabinol (THC) and a positive finding of 210 nanograms per milliliter of Delta-9 carboxy THC.

¶ 7   The court found defendant guilty on all counts. Thereafter, defendant renewed her motion for a drug court eligibility screening. The court denied the request on the same grounds.

¶ 8   At sentencing, the State requested the maximum sentence of 14 years' imprisonment on the most serious charge of count I. Defendant renewed her request for a drug court screening, which was again denied. In imposing a sentence, the court observed: "[T]he Court finds that there are two statutory factors in aggravation, and those are No. 1, serious harm and death, and No. 2, deterrence." The court made no further reference to those factors and then sentenced defendant to terms of six years' imprisonment on each count, to be served concurrently. The court also imposed a fine of $10,305. The court pointed out that defendant would serve 1861 days in prison, and with a credit of $5 for each of those days, her fine would be effectively $1000.

¶ 9                                II. ANALYSIS

¶ 10   On appeal, defendant raises the following four arguments: (1) the statute under which defendant was convicted was unconstitutional on its face, (2) the court committed error when it denied defendant's request to be screened for drug court, (3) the court improperly considered two factors in aggravation, and (4) the court's calculation of presentence custody credit and concomitant assessment of fines were erroneous.

¶ 11                    A. Constitutionality of DUI Statute

¶ 12   Defendant contends that the aggravated DUI statute in effect at the time of her offense was unconstitutional on its face. More specifically, she asserts that the law failed to satisfy the rational basis test because "it was not a reasonable method of accomplishing the desired legislative objective of keeping cannabis-impaired drivers off the road."

¶ 13   Where a statute does not bear upon a fundamental constitutional right, it must only survive rational basis review to be deemed constitutional. Under that test, a statute will be upheld if it "bears a reasonable relationship to a public interest to be served, and the means adopted are a reasonable method of accomplishing the desired objective." *People v. Adams*, 144 Ill. 2d 381, 390 (1991). Where a statute subjects wholly innocent conduct to a penalty, it "fails the rational basis test because it does not represent a reasonable method of preventing the targeted conduct." *People v. Madrigal*, 241 Ill. 2d 463, 468 (2011).

¶ 14   Defendant was convicted of aggravated DUI in part under section 11-501(a)(6) of the Illinois Vehicle Code (Code) (625 ILCS 5/11-501(a)(6) (West 2014)).[1] At the time of defendant's offense in 2014, that section read:

> "(a) A person shall not drive or be in actual physical control of any vehicle within this State while:

                                * * *

---

[1]Section 11-501(a) of the Code, both in 2014 and presently, establishes the baseline elements of DUI. From there, defendant's convictions were elevated to aggravated DUI via subsections (d)(1)(C) and (d)(1)(F), which apply where the commission of DUI results in great bodily harm and death, respectively. 625 ILCS 5/11-501(d)(1)(C), (d)(1)(F) (West 2014). Those subsections are not contemplated in defendant's constitutional challenge.

(6) there is any amount of a drug, substance, or compound in the person's breath, blood, or urine resulting from the unlawful use or consumption of [*inter alia*] cannabis listed in the Cannabis Control Act ***." *Id.*

Notably, the legislature amended section 11-501(a)(6)—effective July 29, 2016—removing cannabis from the list of narcotics for which "any amount" would render a person guilty of DUI. See 625 ILCS 5/11-501(a)(6) (West 2018). The legislature also added section 11-501(a)(7), which held that a person was guilty of DUI only where a certain threshold amount of cannabis could be found in the person's blood or other bodily substance. *Id.* § 11-501(a)(7); see also *id.* § 11-501.2(a)(6).

¶ 15    Defendant concedes that maintaining safe roadways and keeping impaired drivers off of said roadways are legitimate State interests. Indeed, defendant does not dispute that the version of section 11-501(a)(6) in effect in 2014 would contribute to the accomplishment of that objective. After all, keeping drivers with *any* cannabis in their systems off of roadways no doubt would include those drivers with so much cannabis in their system as to be impaired. However, defendant maintains that the statute was too broad, in that it "criminalized a great deal of innocent conduct, *i.e.*, unimpaired driving." Thus, she argues that criminalizing driving with "any amount" of cannabis in a person's system was not a reasonable method of preventing the targeted conduct and therefore the statute fails rational basis review. See *Madrigal*, 241 Ill. 2d at 468.

¶ 16    Defendant's argument necessitates a discussion of our supreme court's 1994 decision in *People v. Fate*, 159 Ill. 2d 267 (1994). The defendant in that case raised the same argument that defendant does here, namely, that section 11-501(a)(6) was facially unconstitutional because it did not adequately target actual impairment. *Id.* at 269. Applying rational basis review, our supreme court rejected that contention, finding the law constitutional. *Id.* at 271. In reaching that conclusion, the court cited the "difficulties in measuring the concentration of these drugs with precision from blood and urine samples." *Id.* By way of analogy, the court also pointed out that the setting of a baseline blood alcohol concentration limit was constitutional, "in spite of the fact that certain people can operate a motor vehicle without noticeable impairment at and above that level of alcohol in their systems." *Id.* at 270.

¶ 17    The State insists that *Fate* controls the outcome in the present case. It argues that we may not overrule or modify a decision of our supreme court. Defendant, however, maintains that scientific advances in the decades following the *Fate* decision undermine its rationale, requiring us to reexamine the constitutionality of the statute. She points out that the *Fate* court relied, at least in part, on the "difficulties in measuring the concentration of these drugs with precision from blood and urine samples." *Id.* at 271. Defendant contends that such difficulties no longer exist, as evidenced by the legislature's amendment of section 11-501(a)(6) and addition of section 11-501(a)(7). In essence, defendant argues that scientific advancements in the testing and measurement of cannabis in bodily fluids render the constitutionality of section 11-501(a)(6) in 2014 a wholly distinct question from its constitutionality in 1994, such that a finding in her favor would not be tantamount to overruling our supreme court.

¶ 18    We disagree. It is well settled that when the supreme court " 'has declared the law on any point, *it alone can overrule and modify its previous opinion*, and the lower judicial tribunals are bound by such decision and it is the duty of such lower tribunals to follow such decision in similar cases.' " (Emphasis in original.) *Blumenthal v. Brewer*, 2016 IL 118781, ¶ 61 (quoting *Price v. Phillip Morris, Inc.*, 2015 IL 117687, ¶ 38). This tenet applies with even greater force

in this case, as only one of the bases for the *Fate* court's finding of constitutionality has been ostensibly undermined. As the *Fate* court based its conclusion on multiple grounds, it is not clear, as defendant claims, that the present question of the constitutionality of section 11-501(a)(6) is a wholly distinct question from that addressed in *Fate*. Accordingly, as we are bound by our supreme court's decision in *Fate*, we find that the 2014 version of section 11-501(a)(6), under which defendant was convicted, remains constitutional. *Fate*, 159 Ill. 2d at 271.

¶ 19 Even if *Fate* did not dictate the outcome here, a separate issue prevents us from reaching the merits. Our supreme court has made clear that a factual record supporting a claim of unconstitutionality is vital to the adjudication of such a claim on appeal. *People v. Bingham*, 2018 IL 122008, ¶ 22. "[A]ll as-applied challenges are, by definition, dependent on application of the law to the specific facts and circumstances alleged by the challenger; therefore, it is crucial that the record be sufficiently developed with respect to those facts and circumstances for purposes of appellate review." *Id.*

¶ 20 While as-applied challenges are inherently fact-dependent, some—if not most—facial challenges may be addressed strictly on legal grounds. Defendant's facial challenge in the present case, however, is quite fact-intensive. Her argument relies solely on establishing that the scientific procedures for testing for cannabis in bodily fluid have sufficiently advanced since the *Fate* decision in 1994. Moreover, defendant must show not simply that the science is sufficiently advanced *now* or was so advanced in 2016 when the legislature amended the statute; rather, she must describe the state of the science in 2014, at the time of her offense. Thus, while defendant's challenge does not relate to facts about the defendant herself or her offense—as in an as-applied challenge—it relies fundamentally on establishing certain scientific facts.

¶ 21 The fact-intensive nature of defendant's claim is illustrated by the numerous assertions in her brief that are unsupported by the record. Many of these assertions are supported only by citation to secondary sources such as academic journals, if supported at all.

> " 'A secondary source is not the law. It's a commentary on the law. A secondary source can be used for three different purposes: it might educate you about the law, it might direct you to the primary law, or it might serve as persuasive authority. Few sources do all three jobs well. The important classes of legal secondary sources include: treatises, periodical articles, legal encyclopedias, ALR Annotations, *Restatements*, and Looseleaf services.' " (Emphasis in original.) *Tilschner v. Spangler*, 409 Ill. App. 3d 988, 994 n.2 (2011) (quoting *Secondary Sources*, Yale Law School Lillian Goldman Law Library, https://library.law.yale.edu/secondary-sources [https://perma.cc/S44C-2UM6]).

Defendant does not employ her secondary sources for any of these purposes. Rather, she cites them in an effort to introduce substantive evidence to establish the necessary scientific facts, then asks that we rely upon them to conclude that the statute is unconstitutional. We will not do so. See *Keener v. City of Herrin*, 235 Ill. 2d 338, 346 (2009) ("[O]ur consideration of this case will be restricted to matters of record. A party may generally not rely on matters outside the record to support its position on appeal.").

¶ 22 Disposition of defendant's claim requires a complex factual analysis. In the words of our supreme court: "Defendant has the heavy burden of overcoming the strong judicial presumption in favor of the constitutionality of the statute he seeks to challenge. Neither the

trial nor the sentencing hearings in this case allowed for the development of the record with a view to litigating a challenge to" section 11-501(a)(6) of the Code. *Bingham*, 2018 IL 122008, ¶ 23. We find that we are without authority to reconsider *Fate* and that, in any event, the record before us would be insufficient to address the merits of that facial challenge.

¶ 23                                                B. Drug Court

¶ 24      Defendant next argues that the circuit court erred when it denied her request for a drug court screening. Defendant contends that upon her request, the court had a mandatory duty to "order a drug court screening to determine [defendant's] eligibility for substance abuse treatment." The State disagrees, arguing that the court was correct in denying defendant's request because she had been charged with, and eventually convicted of, a crime of violence.

¶ 25                                              1. Statutory Law

¶ 26      In 2002, the Illinois legislature enacted the Drug Court Treatment Act (Act). See 730 ILCS 166/1 *et seq.* (West 2016). The Act recognizes the "critical need for a criminal justice system program that will reduce the incidence of drug use, drug addiction, and crimes committed as a result of drug use and drug addiction." *Id.* § 5. The Act thus mandates: "The Chief Judge of each judicial circuit must establish a drug court program including the format under which it operates under this Act." *Id.* § 15(a).

¶ 27      Section 20 of the Act is titled "Eligibility," and holds:

> "(a) A defendant may be admitted into a drug court program only upon the agreement of the defendant and with the approval of the court.
>
> (b) A defendant shall be excluded from a drug court program if any of one of the following apply:
>
> (1) The crime is a crime of violence as set forth in clause (4) of this subsection (b).
>
> (2) The defendant denies his or her use of or addiction to drugs.
>
> (3) The defendant does not demonstrate a willingness to participate in a treatment program.
>
> (4) The defendant has been convicted of a crime of violence within the past 10 years excluding incarceration time. As used in this Section, 'crime of violence' means: first degree murder, second degree murder, predatory criminal sexual assault of a child, aggravated criminal sexual assault, criminal sexual assault, armed robbery, aggravated arson, arson, aggravated kidnaping, kidnaping, aggravated battery resulting in great bodily harm or permanent disability, stalking, aggravated stalking, or any offense involving the discharge of a firearm." *Id.* § 20.

Notably, prior to September 8, 2015, section 20(a) dictated that a defendant's admittance into drug court also required "the agreement of the prosecutor." 730 ILCS 166/20(a) (West 2014). When that requirement was removed, the legislature added section 20(c) to the Act, which still requires prosecutorial agreement when a defendant is charged with certain serious drug offenses, of which none are relevant to the present case. 730 ILCS 166/20(c) (West 2016).

¶ 28      Section 25 of the Act is titled "Procedure," and holds in relevant part:

> "(a) The court shall order an eligibility screening and an assessment of the defendant by an agent designated by the State of Illinois to provide assessment services

for the Illinois Courts. An assessment need not be ordered if the court finds a valid assessment related to the present charge pending against the defendant has been completed within the previous 60 days." *Id.* § 25(a).

The remainder of section 25 delineates other mandatory features of the drug court program. See *id.* § 25(d), (e).

¶ 29                                                     2. Local Rules

¶ 30      The Act, by its very nature, does not create a drug court, either at the state or county level. Rather, it instructs each individual judicial circuit to create a county- or circuit-wide drug court. *Id.* § 5. From there, it broadly prescribes certain mandatory eligibility criteria and procedures. *Id.* §§ 20 through 25. For a more detailed view of the drug court policies attendant to this case, then, we must turn to the Tazewell County Adult Drug Court (TCADC) policies and procedures.[2]

¶ 31      Under the heading of "Assessment and Enrollment Processes," the TCADC policy manual states that "[r]eferrals of potential participants" in drug court may come from a variety of sources, including private or public defense counsel. Following such a referral, the policy manual dictates that "the Judge *may* enter an order for the potential participant to be pre-screened for admission to the program." (Emphasis added.)

¶ 32      If the circuit court enters such an order, the defendant's case is assigned to the probation coordinator. At that stage, the policy manual states: "[E]ligibility factors such as, residence in Tazewell County, statutory limitations regarding prior criminal history, and current criminal status shall be determined. If the individual meets the preliminary eligibility factors, formal assessments will then be completed." Elsewhere, the policy manual holds that a defendant must be or be able to become a resident of Tazewell County and the offense giving rise to the pending charge must have been committed in Tazewell County in order for a defendant to be eligible for drug court.

¶ 33      If a defendant meets all of the "preliminary eligibility factors," the probation department will conduct an "Adult Risk Assessment." It will also arrange for a "treatment provider" to conduct a "substance abuse/mental health assessment." Following those assessments, the matter proceeds to the TCADC team, which consists of a judge, a prosecutor, defense counsel, probation officer, and the treatment provider. The team "shall discuss" whether the defendant is admitted to the program. The policy manual makes clear that "the Judge mak[es] the final decision, taking into consideration the input of team members."

¶ 34                                              3. Defendant's Request

¶ 35      Initially, we reject outright the State's argument that defendant was properly excluded from drug court because she was charged with a crime of violence. Section 20(b)(4) of the Act lists specific, enumerated offenses and leaves no discretion for the addition of others, unless the

_____

[2]By agreement, the parties supplemented the record on appeal with numerous documents relating to the operations of drug courts within the Tenth Judicial Circuit. Within the supplemental materials are two documents titled "Tazewell County Adult Drug Court Policies and Procedures." While both documents are undated, it is clear from their content that they were both created after the 2015 amendment to the Act. See *supra* ¶ 26. For our purposes, there is no substantial difference between the two documents.

discharge of a firearm is involved. *Id.* § 20(b)(4). Clearly, aggravated DUI is not on that list. The State, citing only *Carron*, 298 Ill. App. 3d at 679, asserts that "Illinois courts have found that aggravated [DUI] is a crime of violence." The *Carron* court, however, merely found that the defendant's commission of DUI constituted a violent crime under the Rights of Crime Victims and Witnesses Act (725 ILCS 120/1 *et seq.* (West 1996)). *Carron*, 298 Ill. App. 3d at 678. *That* law defines "violent crime" as, *inter alia*, "any violation of *** Section 11-501 of the *** Code, or a similar provision of a local ordinance, if the violation resulted in personal injury or death." 725 ILCS 120/3(c)(7) (West 2016). In short, neither *Carron* nor the statute it discussed have any bearing on the Act or on the present case. Under the Act, defendant was not charged with a crime of violence.

¶ 36    In its alternative ground for denying defendant's request for a drug court assessment, the circuit court found that the ordering of an assessment was a discretionary matter. Defendant maintains that the court had no such discretion, and that section 25(a) of the Act rendered an eligibility screening and assessment mandatory.

¶ 37    To be sure, section 25(a) of the Act declares that the circuit court "shall" order an eligibility screening and assessment of the defendant. This is plainly mandatory language. We find it troubling, however, that neither section 25(a) nor section 25 as a whole contains any language limiting that apparent requirement. In other words, the "shall" language is not limited to certain contexts, such as where a defendant requests drug court, nor is it limited to certain defendants, such as those who show indications of being addicted to drugs. The plain language of section 25(a) would seem to hold that the court "shall order an eligibility screening and an assessment" of every defendant. 730 ILCS 166/25(a) (West 2016). "[W]here a plain or literal reading of a statute produces absurd results, the literal reading should yield ***." *People v. Hanna*, 207 Ill. 2d 486, 498 (2003).

¶ 38    The inherent vagueness of section 25(a) should not be construed as a fault in the statute. Indeed, as discussed above, the Act itself is necessarily broad, allowing each judicial circuit leeway in the creation and conduct of its individual drug courts. To that end, the TCADC has added at least one preliminary step to limit the number of defendants for whom an eligibility screening and assessment shall be ordered, that being the referral stage. In other words, only defendants who are referred as potential participants in drug court are advanced to the next stage. This is a reasonable application of the Act.

¶ 39    We also recognize that the TCADC has reasonably bifurcated the "eligibility screening" from the "assessment" contemplated in section 25(a) of the Act. While section 25(a) considers those two steps in tandem, it would be unreasonable to mandate costly substance abuse assessments from treatment providers for defendants who plainly fail to meet the initial eligibility criteria for drug court. This two-step process is especially practical in the wake of the 2015 amendment to the Act, which removed the State as a gatekeeper to drug court.

¶ 40    We are concerned, however, with the vague mandate of the TCADC policy manual that a circuit court, following a referral, "may" send the matter to probation for an eligibility screening. It appears that this is the point at which the circuit court in the present case, having received a referral from defense counsel, denied defendant an eligibility screening. While we have found that the "shall" language of section 25(a) may not be read in its strictest sense, it nevertheless imposes a mandatory requirement at least at *some* point in the admission process. There is no indication in the Act that judicial discretion may be invoked *before* it is even determined whether the defendant is eligible for drug court. While section 20(a) of the Act

- 8 -

requires approval of the court for admission, the TCADC policy manual properly contemplates that this discretion will be exercised by the court at the drug court "team meeting," which occurs only after the defendant has been assessed.

¶ 41 Finally, we note that in apparently providing the court with discretion at the postreferral stage, the TCADC policy manual affords no guidance of that discretion. Indeed, it leaves the court's discretion in the matter wholly unfettered. While the State has suggested that the court's discretion would be guided by the Act's eligibility factors, those factors, by common sense and by the TCADC policy manual, are to be applied at the "eligibility screening" stage.

¶ 42 We thus find that the unfettered discretion suggested in the TCADC policy manual, and apparently applied by the circuit court here, is inapposite to section 25(a) of the Act. Where a defendant is referred to drug court, the next step is, at least, a mandatory eligibility screening.

¶ 43 In reaching this conclusion, we recognize that a formal eligibility screening may not be necessary in every case. While the TCADC policy manual indicates that the initial eligibility screening is conducted by the probation department, such a procedure would seem unnecessary where, for example, the defendant has plainly been charged with an offense listed in section 20(b)(4) of the Act and is thus ineligible for drug court. This and other potential eligibility factors may be easily and immediately discerned by the circuit court. Thus, we find that it would be reasonable for the court, in essence, to conduct the eligibility screening itself, rather than order it done by another party. Of course, that is not what happened in this case. Outside of the erroneous finding that defendant had committed a crime of violence (see *supra* ¶ 35), the court did not cite any proper ineligibility grounds for denying defendant's referral.

¶ 44 We also do not expect that our present holding should create an undue burden on treatment providers conducting drug court assessments, a potential concern following the 2015 amendment to the Act. Potential drug court candidates, at least under the TCADC policies, must still get a referral to drug court and meet all eligibility criteria before they are afforded an assessment. These eligibility criteria include not only those found in section 20(b) but also additional criteria added by the individual drug court, as the TCADC has done in its policies.

¶ 45 In conclusion, we find that the circuit court erred in denying defendant's request for a drug court eligibility screening. We therefore vacate defendant's sentences.[3] We remand the matter with instructions that the circuit court conduct or order an eligibility screening for defendant. If defendant is deemed eligible for drug court, the procedures should follow in line with the TCADC policy manual, beginning with assessments by probation and a treatment provider. If defendant is not ultimately admitted into the TCADC, the circuit court shall sentence her anew.

¶ 46 As each of defendant's two remaining arguments concern her sentence which has now been vacated, we need not address those arguments.

---

[3]The TCADC is designated as a "post-adjudicatory drug court program," in which a defendant enters the program after a finding of guilt as part of his or her sentence. 730 ILCS 166/10 (West 2016). Accordingly, defendant requests only vacatur of her sentences but not her convictions.

¶ 47                            III. CONCLUSION

¶ 48        The judgment of the circuit court of Tazewell County is affirmed in part, vacated in part, and remanded for further proceedings.

¶ 49        Affirmed in part, vacated in part, and remanded.